RACINE FIRE AND POLICE COMMISSION, Appellant, v. STANFIELD and others, Respondents: KRENZKE and another, Defendants.

*No. 786 (1974). Submitted under sec. (Rule) 251.54 October 2, 1975.—Decided October 28, 1975.*

(Also reported in 234 N. W. 2d 307.)

396

For the appellant the cause was submitted on the brief of *Foley & Capwell, S. C.,* of Racine.

For the respondents the cause was submitted on the brief of *Schwartz, Schwartz & Roberts* of Racine.

BEILFUSS, J. The fire and police commission alleges it has the exclusive right, power and duty to set the terms of probation and termination of employment; that arbitration is illegal and usurps the rights and powers of the commission to the irreparable damage of the citizens of the city and county of Racine. The sole question before us is whether the Racine Fire and Police Commission can maintain this action.

The powers of city police and fire commissions are set forth in sec. 62.13 (3), (4), (5), (5m) and (6), Stats.

Briefly stated, boards of police and fire commissions are empowered to appoint chiefs of police and fire departments and remove or suspend them for just cause; to approve appointments of subordinates; to examine and approve candidates to be placed on a list of persons

eligible for appointments and promotion and to adopt, repeal or modify the rules "calculated to secure the best service in the departments;" and to suspend subordinates for cause pursuant to a statutory procedure with persons so suspended having the right to "appeal from the order of the board to the circuit court." Optional powers of the board include the powers to organize and supervise the fire and police departments and prescribe rules and regulations for their control and management, to contract for and purchase all necessary apparatus and supplies for the use of the department and to audit all bills, claims and expenses of the fire and police departments before they are paid by the city treasurer. It is not a matter of record whether the plaintiff in this action was entitled to exercise the optional powers. Nowhere is the commission expressly given the right to sue or to be sued.

The fire and police commission argues that it is a state agency and that its functions and operation are matters of statewide concern. Sec. 62.13 (1) and (2), Stats., provide that all cities with a population of over 4,000 shall have a board of fire and police commissioners. We take judicial notice that Racine is a city with a population far in excess of 4,000. Sec. 62.13 (12) directs that sec. 62.13 "shall be construed as an enactment of state-wide concern for the purpose of providing a uniform regulation of police and fire departments."

In *Van Gilder v. Madison* (1936), 222 Wis. 58, 267 N. W. 25, 268 N. W. 108, this court held that police and fire protection is a matter of statewide concern, and that the constitution's "home-rule" amendment did not grant a municipality authority to enact an ordinance which withdrew the city from the operation of sec. 62.13 (7), Stats., prohibiting the decrease in policemen's salaries without a prior recommendation by the board of fire and police commissioners.

These statutes and the *Van Gilder Case* lend substantial weight to the proposition that the fire and police

commission can assert its authority even when it may appear to be antagonistic to the policies of the city upon the overriding consideration that uniformity of management of fire and police affairs is a matter of statewide concern.

It is the general rule that an agency or board created by the legislature has only those powers which are either expressly conferred or which are, by necessity, to be implied from the four corners of the statute under which it operates. *State. ex rel. Farrell v. Schubert* (1971), 52 Wis. 2d 351, 190 N. W. 2d 529; *Ford v. Wisconsin Real Estate Examining Board* (1970), 48 Wis. 2d 91, 179 N. W. 2d 786; *American Brass Co. v. State Board of Health* (1944), 245 Wis. 440, 15 N. W. 2d 27. The effect of this rule has generally been that such statutes are strictly construed to preclude the exercise of a power which is not expressly granted. *See:* 3 Sutherland, *Statutory Construction* (4th ed.), p. 150, sec. 65.02. Nevertheless, this court has, in the past, indicated that an express statutory authorization is not always indispensable to the ability to sue or be sued. *See: Teubert v. Wisconsin Interscholastic Athletic Asso.* (1959), 8 Wis. 2d 373, 99 N. W. 2d 100.

In the *Teubert Case,* the court concluded that the powers which were, by statute, given to a voluntary association were sufficient to warrant its consideration as a separate legal entity apart from its members. Therefore, as to rights of action arising out of those powers and duties, the association could sue or be sued in its own name. The powers there considered relevant were the power to contract, the authority to maintain sufficient reserves to discharge obligations, and the power to borrow money. *Teubert, supra,* pages 375, 376. Subsequently, in *Fray v. Amalgamated, etc., Local Union No. 248* (1960), 9 Wis. 2d 631, 101 N. W. 2d 782, this court indicated that convenience is also a consideration relevant

to the issue of whether a group, otherwise unauthorized to sue or be sued, should be considered a legal entity for that purpose.

In *Flood v. Board of Education* (1975), 69 Wis. 2d 184, 230 N. W. 2d 711, this court held that a board of education of a joint school district had the capacity to sue and be sued in spite of the fact that there was no express authorization therefor in the statutes.[1] In that case, the board was named as defendant in an action by four teachers who challenged the validity of a fair-share agreement contained in the collective bargaining contract entered into by the board and the education association. The board demurred to the complaint on the ground that it was not *sui juris* and subject to suit. In affirming an order overruling the demurrer, this court held that because the board was specifically authorized by statute to enter into the type of contract in question, it was subject to suit in its independent capacity in actions arising out of that contract. The court also indicated that the board was not subordinate to the city council in such matters and that, therefore, a prior case which held that a city school district which by statutes then in effect, operated under the complete control of the city common council, was inapplicable. *See: State ex rel. Board of Education v. Racine* (1931), 205 Wis. 389, 236 N. W. 553.

Both *Teubert* and *Flood, supra,* involved suits arising out of contracts entered into pursuant to specific statutory authorization. In *Teubert* there was some indication that the presence of this factor was thought to give the unincorporated association there involved "the statutory attributes of a co-operative." However, the primary basis for the decision was the "necessity" of affording a right of direct action against the body which purported

---

[1] *Also see: Joint School v. Wisconsin Rapids Education Asso.,* ante, p. 292, 234 N. W. 2d 289.

to enter the contract in its own name. The court stated at page 376:

"All these features persuade us that by estoppel at least it is the Association which is the contracting party and the Association may be held to its contracts."

The estoppel principle was also apparent in *Flood* at page 191:

"It seems clear, therefore, that the board can be sued in the same official capacity that it utilized in entering into the contract."

The question before us is whether the rule announced in the *Flood* and *Teubert Cases* should be limited by the facts of those cases. That is, is the authorization for suit given in those cases limited to actions arising from contracts entered into pursuant to specific statutory authority? While the optional powers of police and fire commissions include the power to enter into certain contracts, it is not a matter of record in this case whether the Racine Fire and Police Commission was authorized to exercise that power. At any rate, this case does not arise out of such a contract. If *Flood* and *Teubert* are to serve as precedent for this case, some broader base for their holdings must be found.

There is language in both cases which indicates that the capacity to maintain and defend actions in an independent capacity was not strictly limited to the factual circumstances there present. In *Flood,* the court pointed to the authority of the board to determine its own budget —a noncontractual power. In *Teubert,* the court cited 4 Am. Jur., *Associations and Clubs,* p. 487, sec. 47, which recognizes the principle that the power to sue or be sued may by necessity be implied from the nature of statutory provisions.

The basis for the rule in both cases appears to be that a particular power or duty conferred by statute may, of

necessity, require the additional power to maintain or defend an action arising out of that power or duty. This is not to say that a body which is given the power to sue in one instance possesses that power for all purposes and all cases. It is only where the capacity to sue or be sued is necessary to carry out an express power or to perform an express duty, or where the action arises out of the performance of statutory powers or obligations that the authority to sue or be sued exists.

Under sec. 62.13 (5) and (5m), Stats., considerable authority is given to boards of police and fire commissioners with respect to the selection, discipline and dismissal of subordinates. In its complaint, plaintiff charges that these provisions preclude the commencement of separate arbitration proceedings in dismissal cases. In effect, the complaint requests a construction of the extent and scope of the commission's statutory powers and obligations. In view of the nature of the action bringing into question the scope of statutory powers and duties, it appears necessary to afford the fire and police commission the right to maintain the action in its own name for the benefit of the citizens of the state. This disposition, of course, does not determine the merits of plaintiff's claim; that must be done after issue is joined in appropriate proceedings.

*By the Court.*—Reversed and remanded for further proceedings.