CITY OF JANESVILLE, Petitioner-Respondent,

v.

WISCONSIN EMPLOYMENT RELATIONS COMMISSION, Respondent-Appellant,†

JANESVILLE PROFESSIONAL POLICE ASSOCIATION, Intervenor-Co-Appellant.†

Court of Appeals

*No. 94–1606. Submitted on briefs February 3, 1995.—Decided April 13, 1995.*

(Also reported in 535 N.W.2d 34.)

†Petition to review filed.

For the respondent-appellant the cause was submitted on the brief of *James E. Doyle*, attorney general, and *David C. Rice*, assistant attorney general.

For the intervenor-co-appellant the cause was submitted on the brief of *Gordon E. McQuillen* and *Richard Thal* of *Cullen, Weston, Pines & Bach* of Madison.

For the petitioner-respondent the cause was submitted on the brief of *Dennis M. White* of *Brennan, Steil, Basting & MacDougall, S.C.* of Madison.

Amicus Curiae brief was filed by *James R. Korom* and *Brent P. Benrud* of *von Briesen & Purtell, S.C.* of Milwaukee, for Wisconsin Chiefs of Police Association.

Amicus Curiae brief was filed by *Howard N. Myers* and *Jeffrey P. Sweetland* of *Shneidman, Myers, Dowling & Blumenfield* of Milwaukee, for Professional Fire Fighters of Wisconsin, Inc.

Before Gartzke, P.J., Dykman and Vergeront, JJ.

495

VERGERONT, J. The Wisconsin Employment Relations Commission (WERC) and the Janesville Professional Police Association (Association) appeal from an order reversing a decision of WERC. In its decision, WERC declared that a proposal by the Association, which would allow police officers in the City of Janesville Police Department to obtain arbitration of suspensions imposed by the City of Janesville Police Chief (police chief) and the City of Janesville Police and Fire Commission (PFC), is a mandatory subject of bargaining under § 111.70(1)(a), STATS. We conclude that the Association's proposal is not a mandatory subject of bargaining and affirm the order of the trial court.

## BACKGROUND

The relevant facts are undisputed. The Association is a labor organization that represents certain law enforcement employees of the City of Janesville. The City and the Association were parties to a 1991 collective bargaining agreement. The agreement contains a three-step grievance and arbitration procedure under which an employee may process a grievance.[1] First, the grievance is submitted to the chief of police and the chief must respond in writing. Second, if the grievance is not resolved at step one, the grievance is submitted to the city manager for a written response. Third, if the

---

[1] A grievance is defined in the agreement as follows:

[A] controversy between the Association and the City or between any member or group of members of the Association and the City as to any matter involving the interpretation of this Agreement, any matter involving an alleged violation of this Agreement in which a member of the Association or a group of members of the Association or the City maintains that any of their rights or privileges have been impaired in violation of this Agreement, and any matter involving work conditions.

grievance is not resolved at step two, the grievant can request binding arbitration.

The agreement also provides that the first step of the grievance and arbitration procedure can be invoked without prejudicing any right to request a hearing by the PFC. After step one, the grievant can either pursue a hearing before the PFC or can pursue arbitration, but not both.[2] Finally, the agreement provides that the grievance and arbitration provision "shall not be construed as limiting or abrogating any rights or remedies provided by Wisconsin Statutes."

On January 24, 1992, the Association filed a complaint with WERC alleging that the City had committed a prohibited practice by refusing to arbitrate the unpaid suspension of a police officer by the police chief. On August 11, 1992, the City filed a petition with WERC for a declaratory ruling, pursuant to § 111.70(4)(b), STATS., on the following issues: (1) Whether a provision that would allow an officer disciplined by the PFC to obtain binding arbitration of his or her discipline rather than seek judicial review of the PFC's decision under § 62.13(5)(i), STATS., is a mandatory subject of bargaining; and (2) Whether a provision that would allow an officer disciplined by the police chief to seek binding arbitration rather than a hearing before the PFC is a mandatory subject of bargaining.

On May 7, 1993, WERC issued its decision, concluding that the Association's proposal was a mandatory subject of bargaining. WERC stated:

---

[2] The agreement provides: "It is the express intention of the parties by this paragraph to limit only the right of the individual member for availing himself of two simultaneous appeal procedures."

The 1991 collective bargaining agreement noted above, when interpreted in a manner necessary to avoid an otherwise irreconcilable conflict with Sec. 62.13, Stats., makes the grievance and arbitration procedure therein applicable to disciplinary actions imposed by the Janesville Board of Police and Fire Commissions only if such disciplinary actions have not been appealed to the Circuit Court pursuant to Sec. 62.13, Stats., and then only to the extent that such grievances are subject to processing at no other step than the grievance arbitration step of those procedures.

The 1991 collective bargaining agreement noted above, when interpreted in a manner necessary to avoid an otherwise irreconcilable conflict with Sec. 62.13, Stats., makes the grievance and arbitration procedure therein applicable to disciplinary actions imposed by the Chief of Police where the Janesville Board of Police and Fire Commissioner's jurisdiction over such discipline has not been invoked.

The City filed a petition for judicial review of WERC's decision in Rock County Circuit Court under ch. 227, STATS. On May 6, 1994, the trial court entered an order reversing the decision of WERC.

## STANDARD OF REVIEW

We review the decision of WERC, not the decision of the trial court. *Crawford County v. WERC*, 177 Wis. 2d 66, 69, 501 N.W.2d 836, 838 (Ct. App. 1993). In *County of La Crosse v. WERC*, 180 Wis. 2d 100, 508 N.W.2d 9 (1993), our supreme court explained the appropriate standard of review as follows:

[N]ormally, WERC's rulings with respect to the bargaining nature of proposals are entitled to "great weight." That deference is predicated on the commission's perceived expertise in collective bargaining matters. Yet, courts of this state have held that such deference is unwarranted when the proposal in question requires harmonization of the Municipal Employment Relations Act (MERA) (secs. 111.70-111.77, Stats.) with other state statutes. *See, City of Brookfield v. WERC*, 87 Wis. 2d 819, 826-27, 275 N.W.2d 723 (1979) *("Brookfield I")*; *Glendale Professional Policemen's Assn. v. City of Glendale*, 83 Wis. 2d 90, 100-01, 264 N.W.2d 594 (1978). Such legal questions fall within the special competence of courts. *Glendale*, 83 Wis. 2d at 100-01.

*Id.* at 107, 508 N.W.2d at 11 (citations omitted). *See also Iowa County v. Iowa County Courthouse*, 166 Wis. 2d 614, 618, 480 N.W.2d 499, 501 (1992); *Crawford County*, 177 Wis. 2d at 70, 501 N.W.2d at 838-39. We therefore review WERC's decision *de novo*, without according it any deference.

## DISCUSSION

The Municipal Employment Relations Act (MERA) establishes the duties of a municipal employer to bargain collectively with its employees and to abide by any collective bargaining agreement agreed upon. *Drivers, etc., Local No. 695 v. WERC*, 121 Wis. 2d 291, 296, 359 N.W.2d 174, 177 (Ct. App. 1984). It sets out three categories of subjects of collective bargaining. A mandatory subject of bargaining is one primarily related to wages, hours and conditions of employment. *Beloit Educ. Ass'n v. WERC*, 73 Wis. 2d 43, 50-51, 242 N.W.2d 231, 234 (1976). A permissive subject of bargaining is one pri-

marily related to the management and direction of the governmental unit. *Id.* A municipal employer may, but need not, bargain over this subject. *Id.* A prohibited subject of bargaining is one that would violate a law. *WERC v. Teamsters Local No. 563*, 75 Wis. 2d 602, 612, 250 N.W.2d 696, 701 (1977), *overruled on other grounds, City of Madison v. Madison Professional Police Officers Ass'n*, 144 Wis. 2d 576, 425 N.W.2d 8 (1988).

The City concedes that the Association's proposal regarding arbitration of disciplinary actions is primarily related to wages, hours and conditions of employment and, therefore, would normally be a mandatory subject of bargaining. However, the City contends that there is an irreconcilable conflict between the proposal and a specific statutory provision, § 62.13(5), STATS.,[3] that makes the Association's proposal a prohibited subject of bargaining.

The general rule is that collective bargaining agreements arrived at under § 111.70, STATS., and statutes relating to such agreements should be harmonized whenever possible. *Iowa County*, 166 Wis. 2d at 619, 480 N.W.2d at 501; *Glendale Professional Policemen's Ass'n v. City of Glendale*, 83 Wis. 2d 90, 103-04, 264 N.W.2d 594, 601 (1978). However, if there is an irreconcilable conflict between a proposal made under § 111.70, STATS., and a specific statutory provision, the proposal is a prohibited subject of bargaining. A contract provision that runs counter to an express statutory command is void and unenforceable. *See, e.g., Drivers, etc., Local No. 695*, 121 Wis. 2d at 297-98, 359 N.W.2d at 177-78.

---

[3] All references to § 62.13, STATS., are to the 1991-92 statute, unless otherwise indicated.

Section 62.13, STATS., regulates municipal police and fire departments and is "an enactment of state-wide concern for the purpose of providing a uniform regulation of police and fire departments." Section 62.13(12). Section 62.13(1) requires cities with populations of 4,000 or more to create a PFC with jurisdiction over the hiring, promotion and discipline of members of police and fire departments.

Section 62.13(5), STATS., governs discipline of subordinates within police and fire departments. Under § 62.13(5)(c), a subordinate to the chief of police may be suspended by the chief or the PFC for cause as a penalty. The police chief must file a report of the suspension and the subordinate is entitled to a hearing before the PFC if he or she so chooses. *Id.* If the subordinate requests a hearing before the PFC, the chief must file charges with the PFC upon which the suspension was based. *Id.*

Under § 62.13(5)(b), STATS., charges may be filed against a subordinate by the chief, a member of the PFC, the PFC as a body, or by any aggrieved person. After the filing of charges, the PFC must hold a public hearing on the charges to determine whether the charges should be sustained. Section 62.13(5)(d). After the hearing, if the charges are sustained, the PFC has authority to suspend, reduce in rank, suspend and reduce in rank, or remove the subordinate, "as the good of the service may require." Section 62.13(5)(e). The subordinate may appeal an adverse decision of the PFC to the circuit court, and the circuit court determines whether the order of the PFC was reasonable. Section 62.13(5)(i). If the circuit court sustains the PFC's order, the order is "final and conclusive." *Id.*

## I. DISCIPLINE IMPOSED BY PFC

WERC acknowledges that under § 62.13(5), STATS., the PFC has the ultimate authority to suspend subordinates and the exclusive authority to reduce in rank and remove subordinates. However, citing *Fortney v. Sch. Dist. of West Salem*, 108 Wis. 2d 167, 321 N.W.2d 225 (1982), WERC argues that the Association's proposal can be harmonized with the PFC's statutory authority and, therefore, is a mandatory subject of bargaining.[4]

In *Fortney*, the issue was whether an arbitration panel appointed pursuant to a grievance procedure in a collective bargaining agreement could hold a *de novo* factual hearing to determine whether just cause existed for a school board to terminate a teacher. *Fortney*, 108 Wis. 2d at 169, 321 N.W.2d at 228. The school board argued that it was vested by statute with exclusive authority to hire and fire teachers and that the determination of whether there was just cause to discharge the teacher could not be transferred from the school board to an arbitration panel. The school board acknowledged that the discharged employee was entitled to file a grievance on whether the board's determination of just cause was supported by credible evidence and was not arbitrary and capricious. However, the school board contended that the arbitration panel's review of the just cause determination should have been limited to a certiorari review of the factual record relied upon by the school board in reaching its

---

[4]Although the issue of whether the provisions of § 62.13(5), STATS., preclude the commencement of separate arbitration proceedings in dismissal cases arose in *Racine Fire and Police Comm'n v. Stanfield*, 70 Wis. 2d 395, 234 N.W.2d 307 (1975), our supreme court did not reach the issue. *Id.* at 402, 234 N.W.2d at 311.

decision, and should not have been the subject of a *de novo* hearing conducted by the arbitration panel. *Id.* at 177, 321 N.W.2d at 232.

Our supreme court recognized that pursuant to § 118.22(2), STATS., school boards have the exclusive power to hire and fire teachers, subject to the teacher's constitutional right to due process.[5] *Id.* at 174, 321 N.W.2d at 230. The court noted, however, that the power to discharge teachers may be limited by the provisions of a collective bargaining agreement entered into by the board with the union under MERA. *Id.* at 175, 321 N.W.2d at 230-31. The court then reiterated the principle that although collective bargaining agreements arrived at under MERA and statutes relating to matters contained in such agreements are to be harmonized wherever possible, an arbitrator's decision must be vacated if it is inconsistent with or violative of a statutory provision. Applying this principle, the court concluded:

> [H]armonizing the collective bargaining agreement provisions with the Board's power to discharge set forth in sec. 118.22(2), Stats., leaves the Board with the exclusive right to discharge an employe, but requires that just cause exist for the discharge. If the employe contends there was no just cause for discharge, he may process a grievance through the procedure contained in the agreement. If that grievance goes to arbitration, the arbitrators, under the terms of the agreement, may make an independent determination of whether there was just cause for the discharge, relying on whatever procedures they deem necessary to reach that determination.

---

[5] The teacher's constitutional right to due process required just cause for discharge and a hearing.

*Fortney*, 108 Wis. 2d at 179-80, 321 N.W.2d at 233.

*Fortney* does not control this case. There, the bargaining agreement could be harmonized with the statute because, although § 118.22(2), STATS., gave the board the exclusive power to fire teachers, it did not provide for who determines whether just cause exists for discharge. The school board could therefore agree to have an arbitration panel perform that function. In contrast, the PFC not only has the ultimate authority to suspend employees and the exclusive authority to reduce in rank and remove subordinates, it is also expressly charged with determining whether the charges filed against a subordinate should be sustained at a public evidentiary hearing. *See* § 62.13(5)(d), STATS. It is inconsistent with that statutory charge to permit a subordinate who is dissatisfied with a PFC decision to seek arbitration of essentially the same issue decided by the PFC. This is not a harmonization of the Association's proposal with the PFC's statutory authority. Rather, under the Association's proposal, the PFC's order, which under § 62.13(5)(i), STATS., is "final and conclusive" unless reversed by the circuit court, becomes meaningless.

We consider *Milwaukee Police Ass'n v. City of Milwaukee*, 113 Wis. 2d 192, 335 N.W.2d 417 (Ct. App. 1983), to be more on point than *Fortney*. In *Milwaukee Police Ass'n*, the issue was whether the termination of a probationary police department employee was arbitrable under a collective bargaining agreement. We stated that to allow an arbitrator to reinstate a terminated probationary officer would destroy the PFC's power to limit the selection of police officers on statutorily founded bases. *Id.* at 196, 335 N.W.2d at 419. We explained:

Were we to so read the collective bargaining agreement to allow such a termination to be arbitrable, we would be allowing a general contractual term to govern over an express power to select as vested in police chiefs and boards granted in sec. 62.13(4), Stats., . . .

. . . .

If an arbitrator may reverse the board's or chief's exercise of discretion in terminating a probationary employe and reinstate him, the board's or chief's decision becomes meaningless; it may then always be overridden by an arbitrator.

*Id.* at 196-97, 335 N.W.2d at 419.

The appellants contend that our decision in *Milwaukee Police Ass'n* must be limited to the precise issue in that case, namely, whether the termination of a *probationary* police officer may be made subject to a grievance and arbitration provision. We disagree. We recognize that *Milwaukee Police Ass'n* did not involve the authority to discipline officers, but instead involved the authority to examine and select officers under § 62.13(4), STATS., and the training and employment of probationary officers under § 165.85, STATS. However, just as the collective bargaining provision in that case "would, in effect, ultimately transfer to the arbitrator the chief's or the board's power to determine that an officer should advance from probationary to permanent status or should be terminated during probation," *id.* at 197, 335 N.W.2d at 419, the collective bargaining proposal in this case would transfer to an arbitrator the PFC's power to determine whether charges against a subordinate should be sustained. This transfer of authority is prohibited under *Milwaukee Police Ass'n.*

*Crawford County v. WERC*, 177 Wis. 2d 66, 501 N.W.2d 836 (Ct. App. 1993), reaches a similar result,

although with a different statute. In *Crawford County*, the union proposed to include, *inter alia*, appointed deputies of the Crawford County Register of Deeds (register) and Clerk of Circuit Court (clerk) under the terms and conditions of the union's collective bargaining agreement, and argued that this proposal was a mandatory subject of bargaining. *Id.* at 68, 501 N.W.2d at 838. The county objected to the union's proposal, contending that the proposal impermissibly interfered with the statutory powers of the register and clerk to appoint and discharge their deputies under then-existing §§ 59.38(1) and 59.50, STATS.

WERC declared that the proposal was a mandatory subject of bargaining. We disagreed, concluding:

> We think the union's proposal in this case does much more. With respect to the register of deeds and clerk of courts, at least, we believe it does not merely restrict their authority to hire and fire deputies; . . . we believe the proposal effectively abrogates that authority.

*Crawford County*, 177 Wis. 2d at 73, 501 N.W.2d at 839. *See also Iowa County*, 166 Wis. 2d at 620, 480 N.W.2d at 502.

The appellants contend *Crawford County* must be read as an exception to *Fortney* in those instances where the removal authority is vested in a state officer or other person who exercises the local presence of the state. We believe this reading of *Crawford County* is too narrow. It is true that we based our holding in *Crawford County* in part on the fact that the register and clerk "perform to a significant degree the business of the people of the state" and, therefore, while the county had the authority to bargain with the union on wages and conditions of employment of its employees,

that authority did not extend to bargaining away the statutory power of these officers to appoint and discharge deputies. *Crawford County*, 177 Wis. 2d at 77, 501 N.W.2d at 841-42. However, we also based our holding in *Crawford County* on the more general proposition that the union's proposal was irreconcilable with the statutory authority of the register and clerk to hire and fire deputies because the proposal "effectively abrogate[d] that authority." *Id.* at 73, 501 N.W.2d at 839. Like the proposal did in *Crawford County*, the proposal here would abrogate the PFC's authority.

This case is distinguishable from *Glendale Professional Policemen's Ass'n v. City of Glendale*, 83 Wis. 2d 90, 264 N.W.2d 594 (1978), a case relied on by appellants. In *Glendale*, a provision in the collective bargaining agreement between the city and its police officers provided that promotions were to be based on seniority. The issue was whether that provision could be harmonized with a city charter law giving the police chief the power to promote subordinates, subject to approval by the PFC. *Id.* at 93, 264 N.W.2d at 597. The *Glendale* court was able to harmonize the collective bargaining agreement and the chief's statutory powers because the bargaining agreement's seniority provision applied only to situations where there was more than one qualified candidate for promotion. *Id.* at 106, 264 N.W.2d at 602-03. It did not require the police chief to select an unqualified person because of that person's seniority. *Id.* According to the court, the bargaining agreement's provision did not abrogate the police chief's authority, it "merely restrict[ed] the discretion that would otherwise exist." *Id.* at 103, 264 N.W.2d at 601.

Here, the Association's proposal eliminates, not limits, the PFC's statutory authority if a subordinate

decides to seek arbitration following the PFC's decision. Under the proposal, the arbitrator's function would not be to review the PFC's decision within the limited scope permitted by court review. *See* § 62.13(5)(i), STATS. ("The question to be determined by the court shall be: Upon the evidence was the order of the board reasonable?").[6] Since the arbitrator may choose to hold a hearing *de novo*, as WERC acknowledges, the hearing before the PFC becomes a step having no function in the process. Presumably, if the subordinate ultimately seeks court review, the review would be of the arbitrator's decision, not of the PFC's decision.

## II. DISCIPLINE IMPOSED BY POLICE CHIEF

The Association contends that its proposal allowing an officer suspended by the police chief to obtain arbitration of the suspension rather than a hearing before the PFC is a mandatory subject of bargaining. We disagree.

---

[6] Section 62.13(5), STATS., was amended by 1993 Wis. Act 53, effective November 25, 1993. Section 62.13(5)(c) and 62.13 (5)(em) provide that no subordinate may be suspended by the police chief or PFC as a penalty, and no subordinate may be reduced in rank, suspended and reduced in rank, or removed by the PFC unless the PFC determines that there is just cause to sustain the charges. In making its determination, the PFC must apply seven specific standards. Section 62.13(5)(i) provides that upon judicial review, the question before the court is no longer whether, upon the evidence, the order of the PFC was reasonable, but rather, whether the evidence establishes that there was just cause to sustain the charges against the subordinate. However, under *Boynton Cab Co. v. DILHR*, 96 Wis. 2d 396, 400 n.2, 291 N.W.2d 850, 852 (1980), we apply the statute as it existed prior to the amendment.

508

Under § 62.13(5), STATS., a subordinate may be suspended by the police chief in either of two ways. First, § 62.13(5)(b) provides that charges may be filed against a subordinate by the chief. The charges shall be in writing and the charges shall be filed with the president of the PFC. *Id.* Pending disposition of the charges, the police chief may suspend the subordinate. *Id.* Following the filing of charges, a copy shall be served on the subordinate and the PFC shall set a date for a public hearing, at which the subordinate and the complainant may be represented by an attorney and may compel the attendance of witnesses by subpoenas. Section 62.13(5)(d). Second, the police chief may suspend a subordinate as a penalty. Section 62.13(5)(c). The police chief shall then file a report of the suspension and the subordinate is entitled to a hearing before the PFC if he or she so desires. *Id.*

The mandatory language of § 62.13(5)(d), STATS., indicates that a hearing before the PFC is required for suspensions imposed by the police chief upon charges. The statute clearly states that upon the filing of charges against a subordinate, a hearing *shall* be held. The statute does not give the officer a choice of whether or not to "invoke" the PFC's jurisdiction. We addressed a similar issue in *Drivers, etc., Local No. 695 v. WERC*, 121 Wis. 2d 291, 359 N.W.2d 174 (Ct. App. 1984). There, WERC appealed from a judgment reversing its ruling that the city of Greenfield had no duty to bargain collectively with a union on provisions of a labor agreement regarding layoff and recall of police officers. The labor agreement provided that in the event of layoff, the employee with the least seniority in the bargaining unit shall be laid off first. The city argued that this provision was in irreconcilable conflict with § 62.13(5m), STATS., which provides that when it

becomes necessary to reduce employees in police and fire departments, "subordinates shall be dismissed in the order of the shortest length of service in the department."

We reversed the judgment of the trial court, concluding:

> In this case sec. 62.13, Stats., is specific to police and fire departments. It sets forth detailed prescriptions on matters sec. 111.70, Stats., does not address. Section 62.13 describes more narrowly the areas in which municipal police and fire departments may bargain than the general municipal employee statute, sec. 111.70. We conclude that sec. 111.70, in the absence of sec. 62.13, could be interpreted to permit a collective bargaining agreement that provided layoff by bargaining unit seniority, since if sec. 111.70 stood alone the statutes would be silent on the matter. However, because sec. 62.13, specifically prohibits layoff in police and fire departments on any other basis than length of service in the department, we conclude that the legislature has expressly prohibited bargaining any contract provision that violates that statute.

*Id.* at 298, 359 N.W.2d at 177-78.

The appellants contend that the quoted language is *dicta* and cannot be read as conclusively resolving the issue of whether a subordinate may seek arbitration rather than a hearing before the PFC. However, at least with respect to § 62.13(5)(d), STATS., we believe the reasoning of *Drivers, etc., Local No. 695* applies. Section 62.13(5)(d) provides that the PFC *shall* conduct a hearing on the charges. As did the court in *Drivers, etc., Local No. 695*, "we conclude that the legislature has expressly prohibited bargaining any contract pro-

vision that violates [the] statute." *Id.* at 298, 359 N.W.2d at 178.

As for suspensions imposed by the police chief as a penalty under § 62.13(5)(c), STATS., we conclude that although the statute provides that a hearing *shall* be held only if requested by the subordinate, the legislature's intent is clear that an officer wishing to challenge a suspension must do so before the PFC. We construe the phrase "requested by the suspended subordinate" to mean that an officer suspended as a penalty need not challenge the suspension at all. We do not read this to say that an alternative method of challenging a suspension as a penalty is acceptable.

We conclude that the Association's proposal giving a subordinate suspended by the police chief the right to arbitrate the suspension rather than seek a hearing before the PFC is not a mandatory subject of bargaining because it is in irreconcilable conflict with § 62.13(5), STATS.

*By the Court.*—Order affirmed.

DYKMAN, J. (*dissenting*). The standard by which we review WERC's decision dictates the outcome of this case. The majority determines that it should independently review WERC's decision. It concludes that the Janesville Professional Police Association's proposal giving a suspended subordinate the right to arbitrate a suspension is not a mandatory subject of bargaining.

We were required to determine the appropriate standard of review in a case much like this one, *Drivers, Salesmen, Warehousemen, Milk Processors, Cannery, Dairy Employees & Helpers Local No. 695 v. WERC*, 121 Wis. 2d 291, 359 N.W.2d 174 (Ct. App.

1984). In that case, we construed § 62.13(5m), STATS., and § 111.70(1)(d), STATS. In determining the appropriate standard of review, we considered the arguably conflicting language of *Glendale Professional Policemen's Ass'n v. City of Glendale*, 83 Wis. 2d 90, 100-01, 264 N.W.2d 594, 600 (1978), *City of Brookfield v. WERC*, 87 Wis. 2d 819, 827, 275 N.W.2d 723, 727 (1979), *Boynton Cab Co. v. DILHR*, 96 Wis. 2d 396, 405-06, 291 N.W.2d 850, 855 (1980), and *Arrowhead United Teachers Org. v. WERC*, 116 Wis. 2d 580, 594, 342 N.W.2d 709, 716 (1984). *Drivers*, 121 Wis. 2d at 294-96, 359 N.W.2d at 176-77. We concluded that we would follow *Arrowhead* and give due weight to WERC's interpretation because it was the most recent supreme court case on the subject. *Id.* at 296, 359 N.W.2d at 177.

Now, *County of La Crosse v. WERC*, 180 Wis. 2d 100, 107, 508 N.W.2d 9, 11 (1993), is the most recent case on the standard of review we are to use when WERC interprets a section of the Municipal Employment Relations Act (MERA), §§ 111.70-111.77, STATS., with other Wisconsin statutes. However, although *County of La Crosse* used a *de novo* standard, it did not overrule or distinguish *Arrowhead* or *Drivers*. Thus, if there were nothing more than the precedent of *Arrowhead* and *Glendale*, one would expect that in *County of La Crosse*, the supreme court would have followed its most recent precedent, *Arrowhead*. *Purtell v. Tehan*, 29 Wis. 2d 631, 636, 139 N.W.2d 655, 658 (1966). Since it did not do so, we should examine *County of La Crosse* to determine the reason for using a *de novo* standard of review. The answer is found in the court's explanation:

> Moreover, deference is particularly unwarranted in this case because our decision today is based upon a characterization of the case that was neither

presented to nor addressed by WERC during its original determination.

*County of La Crosse,* 180 Wis. 2d at 107, 508 N.W.2d at 11.

In a memorandum accompanying its findings of fact, conclusions of law and declaratory ruling, WERC considered the potential conflict between § 62.13, STATS., and the provisions of the collective bargaining agreement. The issue in the case before us was presented to and addressed by WERC. Had the supreme court been presented with the facts of this case rather than those found in *County of La Crosse,* there is no reason to believe that it would not have followed its most recent precedent, *Arrowhead,* and given deference to WERC's decision. That is what I would do in this case, thereby affirming WERC and reversing the trial court's order.