CITY OF MENASHA, Petitioner-Appellant,

v.

WISCONSIN EMPLOYMENT RELATIONS COMMISSION and
Menasha Professional Police Union Local 603,
Respondents-Respondents.

Court of Appeals

*No. 2010AP1799. Submitted on briefs April 14, 2011.
—Decided June 8, 2011.*

2011 WI App 108

(Also reported in 802 N.W.2d 531.)

On behalf of the petitioner-appellant, City of Menasha, the cause was submitted on the briefs of *James R. Macy* and *Mark F. Yokom* of *Davis & Kuelthau, S.C.*, Oshkosh.

On behalf of the respondent-respondent, Wisconsin Employment Relations Commission, the cause was submitted on the brief of *David C. Rice*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

On behalf of the respondent-respondent, Menasha Professional Police Union Local 603, the cause was submitted on the briefs of *Bruce F. Ehlke* of *Ehlke, Gartzke, Bero-Lehmann & Lounsbury, S.C.*, Madison.

A nonparty brief was filed by *Steven B. Rynecki, James R. Korom* and *Kyle J. Gulya* of *von Briesen & Roper, S.C.* of Milwaukee, for *Wisconsin Chiefs of Police Association* and *Wisconsin Fire Chiefs Education Association*.

Before Neubauer, P.J., Anderson and Reilly, JJ.

¶ 1. NEUBAUER, P.J. The City of Menasha appeals from a circuit court order upholding a determination of the Wisconsin Employment Relations Commission (WERC). At issue on appeal is whether the circuit court erred in affirming WERC's determination that Wis. Stat. § 111.70(4)(c)2.b. and (4)(mc)1. (2009–10)[1] prohibit a city from bargaining collectively to require that law enforcement officers represented by a union use the procedures set forth in Wis. Stat. § 62.13(5) exclusively to challenge discipline and are not permit-

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

ted to use arbitration as an alternative. We conclude that § 111.70(4)(c)2.b. permits bargaining as to dispute resolution procedures and does not require the use of § 62.13(5) procedures. However, if the parties bargain for the use of § 62.13(5) procedures, then § 111.70(4)(mc)1. requires arbitration as an alternative. We therefore uphold WERC's ultimate determination in favor of the Menasha Professional Police Union Local 603. Accordingly, we affirm.

## Relevant Law

■

¶ 2. The Municipal Employment Relations Act (MERA), Wis. Stat. §§ 111.70–111.77, governs the collective bargaining[2] between a municipality and its employees who are members of a collective bargaining unit. Under MERA, there are three categories of bargaining: (1) mandatory subjects for which collective bargaining is required (primarily related to wages, hours and conditions); (2) permissive subjects for which collective bargaining is permitted but not required (primarily related to the management and direction of the municipality); and (3) prohibited subjects of bargaining for which collective bargaining is prohibited and would violate the law. *See City of Janesville v.*

---

[2] "Collective bargaining" is defined in part by Wis. Stat. § 111.70(1)(a) as follows:

> [T]he performance of the mutual obligation of a municipal employer, through its officers and agents, and the representative of its municipal employees in a collective bargaining unit, to meet and confer at reasonable times, in good faith, with the intention of reaching an agreement, or to resolve questions arising under such an agreement . . . . The duty to bargain, however, does not compel either party to agree to a proposal or require the making of a concession. Collective bargaining includes the reduction of any agreement reached to a written and signed document.

*WERC,* 193 Wis. 2d 492, 499–500, 535 N.W.2d 34 (Ct. App. 1995); *see also* § 111.70(1)(a).

¶ 3. Previously, this court held that there was an irreconcilable conflict between MERA and WIS. STAT. § 62.13(5), and that because § 62.13(5) provided the exclusive method for law enforcement officers to challenge discipline, the union's proposal for arbitration of grievances related to discipline was a prohibited subject of bargaining. *See City of Janesville,* 193 Wis. 2d at 500, 511. In 2007, the legislature enacted WIS. STAT. § 111.70(4)(c)2.b., overturning the holding in *City of Janesville.*[3] It provides:

> **(4)** POWERS OF THE [EMPLOYMENT RELATIONS] COMMISSION. The commission shall be governed by the following provisions relating to bargaining in municipal employment in addition to other powers and duties provided in this subchapter:
>
> . . . .
>
> (c) *Methods for peaceful settlement of disputes; law enforcement and fire fighting personnel* . . . .

---

[3] WISCONSIN STAT. § 111.70(4)(c)2.b. and (4)(mc) were passed as part of the budget bill, 2007 Wis. Act 20. These provisions were offered in June 2007 as part of an amendment to 2007 SB 40. Although the assembly removed the provisions from 2007 SB 40, the provisions were added back into the bill by the Committee of Conference on 2007 Senate Bill 40, and eventually passed into law in October 2007.

In addressing these provisions, the Legislative Fiscal Bureau noted: "Under the SB 40 provision, the subordinate would be provided with one of two appeal options from a PFC order: (a) the Circuit Court (as provided under current law); or (b) an alternative procedure negotiated under a collectively bargained alternative (as would be provided under SB 40)." *See* Legislative Fiscal Bureau, *Budget Change Items under the Senate and Assembly,* dated July 24, 2007, at 14.

2. 'Arbitration.' . . . .

b. A collective bargaining agreement may, notwith-standing [§] 62.13(5), contain dispute resolution proce-dures, including arbitration, that address the suspen-sion, reduction in rank, suspension and reduction in rank, or removal of such personnel. If the procedures include arbitration, the arbitration hearing shall be public and the decision of the arbitrator shall be issued within 180 days of the conclusion of the hearing.

Thus, while a police and fire commission's procedure for disciplinary actions against subordinate police officers and fire fighters under § 62.13(5) remained a viable contract option, the parties' agreement could contain alternative dispute resolution procedures.

¶ 4. However, also created in 2007 was WIS. STAT. § 111.70(4)(mc), which provides in relevant part:

(mc) *Prohibited subjects of bargaining.* The munici-pal employer is prohibited from bargaining collectively with respect to:

1. The prohibition of access to arbitration as an alternative to the procedures in s. 62.13(5).

It is the interplay of §§ 111.70(4)(c)2.b. and 111.70(4)(mc)1. that is at issue on appeal.

## Background

¶ 5. The City of Menasha is a municipal employer. It was engaged in bargaining with the Menasha Profes-sional Police Union over a successor agreement to a 2007–08 collective bargaining agreement. The City pro-posed to maintain language from the 2007–08 agree-ment which required that the appeal procedures under WIS. STAT. § 62.13 be utilized by a union-represented

256

employee who wished to challenge discipline imposed pursuant to that statutory provision.[4] The Union coun-

[4] The proposed 2009 contract contained language from the 2007–08 collective bargaining agreement, which provided in relevant part:

### ARTICLE III - MANAGEMENT RIGHTS

The City possesses the sole right to operate the Menasha Police Department and all management rights repose in it, subject only to the provisions of this agreement and applicable law. These rights, which are normally exercised by the Chief of Police, include but are not limited to . . . the discipline of employees pursuant to [Wis. Stat. §] 62.13 . . . .

. . . .

### ARTICLE VII - GRIEVANCE PROCEDURE

. . . .

D. *Steps in Procedure*

. . . .

*Step 3*

If the grievance is not settled in the second step, any grievance which is not covered by [Wis. Stat. § 62.13] (i.e., discipline or discharge grievances) and does not involve the authority of the Chief of the Police Department but rather relates only to the interpretation of this contract, shall be submitted to the Personnel Director . . . .

### ARTICLE VIII - ARBITRATION

. . . .

G. *Right to Counsel and Review*

An employee who was notified of pending disciplinary action shall be advised of his/her right of counsel, availability of assistance from the Union and right to review of the disciplinary action by the Menasha Fire and Police Commission under the provisions of [Wis. Stat. § 62.13]. All disciplinary action and all appeals from such action by the affected employees shall be taken pursuant to the provisions of [§ 62.13].

tered with a proposal to omit the language relating to the review of disciplinary action by the City of Menasha Police and Fire Commission and substituting such review by an arbitrator.

¶ 6. On May 11, 2009, the Menasha Professional Police Union filed a petition with WERC seeking a declaratory ruling under WIS. STAT. § 111.70(4)(b)[5] as to whether the bargaining proposal from the City was a prohibited subject of bargaining. The City responded that its proposal was a mandatory subject of bargaining. WERC found that a proposal specifying how an employee can challenge discipline is primarily related to wages, hours and conditions of employment. It concluded that the City's proposal is a mandatory subject of bargaining *unless* MERA prohibits bargaining over such a proposal. It further concluded that the City's proposal is a prohibited subject of bargaining.

¶ 7. WERC issued a declaratory ruling that "[t]he Union does not have a duty to bargain within the meaning of [WIS. STAT. §] 111.70(1)(a) and (3)(a)4. with the City over the proposal" requiring that the appeal

The Union's counterproposal omitted all language pertaining to review by the City of Menasha Police and Fire Commission and inserted arbitration as the method for review of disciplinary actions.

We note that neither the 2009 proposed agreement nor the 2007–08 agreement are in the appellate record. However, portions of the proposal/agreement are cited in the parties' briefs and a complete copy of the 2007–08 agreement is included in the City's appendix.

[5] WISCONSIN STAT. § 111.70(4)(b) provides in relevant part: "Whenever a dispute arises between a municipal employer and a union of its employees concerning the duty to bargain on any subject, the dispute shall be resolved by the [c]ommission on petition for a declaratory ruling."

258

procedures under Wis. Stat. § 62.13 be utilized by union-represented employees who wish to challenge discipline imposed under that statutory provision. WERC found that the disciplinary procedure that the City proposed to include in the parties' successor agreement would prohibit access to arbitration as an alternative to the provisions of § 62.13(5) and that such a procedure was prohibited by § 111.70(4)(mc)1.

¶ 8. In December 2009, the City petitioned the circuit court for review of WERC's decision under Wis. Stat. §§ 227.52–227.57. The City challenged WERC's interpretation and application of Wis. Stat. § 111.70(4)(c)2.b. and (4)(mc)1. The City asked the circuit court to reverse WERC's decision and affirmatively find that (1) the application of the statutes "do not require a municipal employer to propose language contrary to the status quo of an existing collective bargaining agreement setting forth the parties' historical intent and decision to utilize [Wis. Stat. §] 62.13 as the appeals procedure for discipline imposed under that statute" and (2) that the Menasha Professional Police Union "does have a duty to bargain . . . in regard to the status quo language of the parties' existing collective bargaining agreement."

¶ 9. Following a hearing on June 1, 2010, the circuit court entered a written order affirming WERC's decision. The circuit court reasoned that (1) Wis. Stat. § 111.70(4)(c)2.b. provides that a collective bargaining agreement may contain dispute resolution procedures including arbitration, (2) Wis. Stat. § 62.13(5) provides an alternative means of discipline for police officers and fire fighters, and (3) the provision in § 111.70(4)(mc) prevents municipal employers from being able to "trump" the opportunity for arbitration—it prohibits the

employer from being able to bargain the prohibition of access to arbitration. The City appeals.

## Discussion

*Standard of Review*

¶ 10. On appeal, we review WERC's decision, not the decision of the circuit court. *Racine Educ. Ass'n v. WERC*, 214 Wis. 2d 353, 356, 571 N.W.2d 887 (Ct. App. 1997). The issue on appeal involves the interpretation and application of Wis. Stat. § 111.70(4)(c)2.b. and (4)(mc)1. to undisputed facts. Because the issue before WERC was clearly one of first impression, we pay no deference to its statutory interpretation and consider the issue de novo.[6] *Milwaukee Bd. of Sch. Dirs. v. WERC*, 2008 WI App 125, ¶ 10, 313 Wis. 2d 525, 758 N.W.2d 814. In doing so, we bear in mind the following:

> Our goal in interpreting a statute is to discern and give effect to the intent of the legislature. Statutory interpretation begins with the language of the statute. Each word should be looked at so as not to render any portion of the statute superfluous. But "courts must not look at a single, isolated sentence or portion of a sentence" instead of the relevant language of the entire statute. Furthermore, a statutory provision must be read in the context of the whole statute to avoid an unreasonable or absurd interpretation. Statutes relating to the same subject matter should be read together

---

[6] Indeed, the Commission's attorney represented to the circuit court that the Commission's decision was "wrong in two respects" and proposed that the circuit court "decide it either the way the Union or the way the City proposed it and not the highbred [sic] approach that the Commission adopted."

and harmonized when possible. A cardinal rule in interpreting statutes is to favor an interpretation that will fulfill the purpose of a statute over an interpretation that defeats the manifest objective of an act. Thus a court must ascertain the legislative intent from the language of the statute in relation to its context, history, scope, and objective intended to be accomplished, including the consequences of alternative interpretations.

*Hubbard v. Messer*, 2003 WI 145, ¶ 9, 267 Wis. 2d 92, 673 N.W.2d 676 (footnotes omitted).

*WISCONSIN STAT. § 111.70(4)(c)2.b. and (4)(mc)1., Read Together, Permit the Negotiation of Alternative Dispute Resolution Procedures, but Require Arbitration as an Alternative if WIS. STAT. § 62.13(5) is a Designated Procedure.*

██ ██

¶ 11. The City correctly asserts that WIS. STAT. § 111.70(4)(c)2.b. and (4)(mc)1. must be read in pari materia as the statutes were adopted at the same time as part of a single statutory scheme.[7] *See McDonough v. DWD*, 227 Wis. 2d 271, 279, 595 N.W.2d 686 (1999) (two statutes concerning the same subject matter must be read together). Looking first to § 111.70(4)(c)2.b., the City contends, and WERC and the Union agree, that the clear, unambiguous language of § 111.70(4)(c)2.b. provides that a labor agreement may contain municipal police officer discipline procedures which do not provide arbitration. Section 111.70(4)(c)2.b. provides that "[a] collective bargaining agreement *may*, notwithstanding [WIS. STAT. §] 62.13(5), *contain dispute resolution procedures, including arbitration*" and it provides parameters *"[i]f* the procedures include arbitration." (Empha-

[7] Both WIS. STAT. § 111.70(4)(c)2.b. and (4)(mc) were created by 2007 Wis. Act 20, §§ 2666f and 2679i, respectively.

sis added.) Thus, the language of § 111.70(4)(c)2.b., standing alone, permits arbitration, but does not require it.

¶ 12. All parties agree that WIS. STAT. § 111.70(4)(c)2.b. was intended to overturn our holding in *City of Janesville* that a union proposal providing the right to arbitrate a suspension rather than seek a hearing before the police and fire commission "is not a mandatory subject of bargaining [under § 111.70(1)(a)] because it is in irreconcilable conflict with [WIS. STAT.] § 62.13(5)." *City of Janesville*, 193 Wis. 2d at 511. Arbitration of disciplinary disputes is no longer a prohibited subject. Thus, the City's proposed interpretation of § 111.70(4)(c)2.b. appears reasonable: (1) parties are permitted to use either the procedures in § 62.13(5) or to bargain for alternative procedures and (2) arbitration is just one of the alternative procedures to which the parties to a labor agreement can agree; they are not required to choose arbitration as an alternative to the § 62.13(5) procedures. However, the reasonableness of the City's proposed interpretation diminishes when one reads § 111.70(4)(c)2.b. in conjunction with § 111.70(4)(mc)1. and it is here that the parties' interpretation of these two provisions part ways.

¶ 13. WISCONSIN STAT. § 111.70(4)(mc) is entitled "[p]rohibited subjects of bargaining." It provides that "[t]he municipal employer is prohibited from bargaining collectively with respect to . . . 1. The prohibition of access to arbitration as an alternative to the procedures in [WIS. STAT. §] 62.13(5)." Sec. 111.70(4)(mc)1. The City contends that § 111.70(4)(mc)1. simply prohibits an employer from refusing "to bargain the use of grievance arbitration in lieu of § 62.13." The City's interpretation fails to give full force and effect to the language of § 111.70(4)(mc)1., which addresses the *access to arbi-*

*tration* as an alternative to, not instead of, the procedure under § 62.13(5). More to the point, it fails to give full force and effect to the legislature's *prohibition on an employer bargaining collectively to prohibit that access.* The legislature's plain language makes the "prohibition of access to arbitration" a "prohibited *subject* of bargaining." We cannot construe the statutory prohibition of a subject as a requirement to bargain on that subject.

¶ 14. The City additionally contends that requiring agreement on a subject of bargaining is "completely foreign to the concept of collective bargaining in Wisconsin." The City's argument is undermined by the other "prohibited subjects of bargaining" under Wis. Stat. § 111.70(4)(mc)2.-4., which require that certain prohibited subjects are effectively agreed upon as between the parties, including the standards for discipline under Wis. Stat. § 62.13(5)(em) and the payment of compensation under § 62.13(5)(h). As WERC succinctly stated, "[W]here, as here, the municipal employer proposes that [§] 62.13(5) be the exclusive mechanism by which discipline is challenged, it is thereby necessarily also proposing to prohibit access to grievance arbitration contrary to [§] 111.70(4)(mc)." The legislature expressly made this a prohibited subject of bargaining.[8]

_____

[8] In WERC's initial determination, it construed Wis. Stat. § 111.70(4)(mc) as prohibiting only the municipality from bargaining as to prohibited subjects. However, WERC abandoned that approach both before the circuit court and on appeal. WERC asserts on appeal that "if an employer is prohibited from bargaining collectively with respect to [a] proposal, it indeed is a 'prohibited' subject of bargaining . . . regardless of whether it is proposed by a municipal employer or by a union representing municipal employees." We agree that it would be unreasonable to read § 111.70(4)(mc) as permitting only the union to propose a prohibited subject of bargaining, especially in light of the

¶ 15. WERC acknowledges the permissive language in Wis. Stat. § 111.70(4)(c)2.b. but also recognizes the limiting prohibitions of § 111.70(4)(mc)1. when it comes to the interplay of Wis. Stat. § 62.13(5) and arbitration. WERC contends that the limitation of § 111.70(4)(mc)1. on the more general grant of authority provided under § 111.70(4)(c)2.b. gives effect to both statutory provisions. This interpretation, adopted by the circuit court, is summarized by WERC as follows: "§ 111.70(4)(c)2.b. authorizes alternative dispute resolution procedures, including [§] 62.13(5) and arbitration, but that [§] 111.70(4)(mc) prohibits [§] 62.13(5) as the exclusive procedure and requires that if [§] 62.13(5) is a designated procedure, arbitration must also be an available procedure."[9] Although the City contends that this interpretation of § 111.70(4)(mc)1. detracts from the permissive language of § 111.70(4)(c)2.b., we conclude that it provides the only means of harmonizing these two provisions while also ensuring that no language is rendered superfluous. *See Messer,* 267 Wis. 2d 92, ¶ 9.

other subjects prohibited under para. (4)(mc)2.-4., which include standards for discipline.

[9] The Union summarized this proposed interpretation of Wis. Stat. § 111.70(4)(c)2.b. and 111.70(4)(mc) as follows:

Under [§] 111.70(4)(c)2.b. and 111.70(4)(mc)1. . . . an employer may propose and the parties may bargain regarding mediation, a mini-trial or any other dispute resolution procedure, including arbitration, as an alternative to the procedure set forth at [Wis. Stat. § 62.13(5)] . . . . However, the one thing that a municipal employer may not propose, and that parties cannot bargain about, the one thing that is a prohibited subject of collective bargaining, is any proposal that, by its terms, would *require* an employee who seeks to challenge a disciplinary action to follow the procedure set forth at [§ 62.13(5),] at the same time that it prohibits access to arbitration as an alternative . . . .

¶ 16. Although we conclude that the plain language of WIS. STAT. § 111.70(4)(c)2.b. and (4)(mc)1. is unambiguous, the combined meaning of these provisions gives rise to ambiguity. Therefore, in attempting to reconcile these two provisions, we have looked to the legislative history cited by the City. First, the City cites to summaries and memos of the legislative fiscal bureau[10] issued both before and after the creation of § 111.70(4)(c)2.b. and (4)(mc). For example, prior to the enactment § 111.70(4)(c)2.b. and (4)(mc) in October 2007, the Legislative Fiscal Bureau released Employment Relations Commission (Paper #291) which discusses an amendment to the budget bill, 2007 SB 40, reflecting the governor's intent that subordinates be permitted to request a hearing before the police and fire commission or before an arbitrator appointed by WERC. The City contends that the fact that this amendment was never introduced reflects an express rejection of its terms by the legislature. However, we are not persuaded that the failure of this proposed amendment negates the subsequent passage of a similar provision.

¶ 17. The City additionally cites to a Legislative Fiscal Bureau Summary of Budget Provisions of the Committee of Conference dated October 2007. This summary addresses the changes to collective bargaining law, which included the adoption of WIS. STAT. § 111.70(4)(mc)1., stating:

---

[10] "The Wisconsin Legislative Fiscal Bureau is a nonpartisan service agency of the Wisconsin Legislature. The Bureau provides fiscal and program information and analyses to the Wisconsin Legislature, its committees, and individual legislators." *See* Wisconsin State Legislature, Legislative Fiscal Bureau, http://legis.wisconsin.gov/lfb/ (last visited May 3, 2011).

The amendment would permit collective bargaining agreements for fire fighters to establish different dispute resolution procedures, including arbitration, than those provided under current law (PFC or other tribunal review and an option to appeal to the Circuit Court). Further, a municipal employer would be prohibited from bargaining collectively with respect to any prohibition of access to arbitration as an alternative to the disciplinary procedures under current law. As a result, each fire fighter collective bargaining agreement would be allowed to specify dispute resolution procedures applicable to the employees covered by each agreement.

The City argues, and we agree, that this "makes clear that a *bargaining agreement* is allowed to specify a specific dispute resolution procedure." However, we do not agree with the City that this language "explicitly rejects any statutory interpretation requiring arbitration in lieu of the Wis. Stat. § 62.13 procedures."[11] Nor

---

[11] The City also cites to a legislative council staff memorandum entitled Disciplinary Procedures for Law Enforcement Officers and Fire Fighters Under 2007 Wisconsin Act 20, dated January 3, 2008, after the passage of Wis. Stat. § 111.70(4)(c)2.b. and (4)(mc). The memo cited by the City is not part of the public record nor is it included in the appellate record; however, it is in the City's appendix, was referenced by WERC in its decision and no issue is raised as to its authenticity. While both parties identify portions of the memo which they assert support their position, even the author of the legislative council memo cautioned against reliance on her analysis, stating:

> The new statutory language ... is general in nature, without substantial detail. The legislative history of the provisions does not provide much assistance in discerning the intent underlying the language or in predicting how the language will be interpreted by the courts .... Consequently, many of the questions raised may not be definitively answered until the Act's language is clarified by legislation or interpreted by the courts.

does the governor's veto message support the City's interpretation. The governor's veto message provides that § 111.70(4)(c)2.b. and (4)(mc) "permit collective bargaining agreements . . . to contain dispute resolution procedures as an alternative to the Circuit Court appeals process. In addition, municipal employers are prohibited from refusing to collectively bargain . . . over arbitration." The City argues that this legislative history demonstrates that arbitration is just one alternative means of dispute resolution. While that is true, and WERC concedes as much, none of this history rules out our bottom line conclusion that § 111.70(4)(c)2.b. permits arbitration while § 111.70(4)(mc)1. requires arbitration as an alternative if § 62.13(5) is a designated procedure.

¶ 18. Finally, we recognize Wisconsin's long history with police and fire commissions. *City of Madison v. DWD*, 2003 WI 76, ¶ 13, 262 Wis. 2d 652, 664 N.W.2d 584 (police and fire commissions were created and endowed with statutory responsibilities and prerogatives over 100 years ago in 1897). We also acknowledge the City's concern regarding the impact of WIS. STAT. § 111.70(4)(mc)1. on bargaining and local control, including the possibility that it could reduce the role of the police and fire commissions in this state or, at the very least, create a procedure involving two potential decision makers.[12] However, we may not substitute our judgment for that of the legislature; we may not rewrite the statute. *See Bank of Commerce v. Waukesha Cnty.*,

---

[12] These arguments echo in part those of the amici curiae, The Wisconsin Chiefs of Police Association and the Wisconsin Fire Chiefs Association. While we acknowledge these broader concerns regarding the status of WIS. STAT. § 62.13(5) disciplin-

89 Wis. 2d 715, 724, 279 N.W.2d 237 (1979) (it is not the function of the court to rewrite the statutes; a court of review is bound to interpret the statutory language and intent as it is written); *see also State v. Bruckner*, 151 Wis. 2d 833, 844, 447 N.W.2d 376 (Ct. App. 1989) (we must construe what has been written; it is not for us to add or subtract, delete or distort).

## Conclusion

¶ 19. We conclude that WIS. STAT. § 111.70(4)(c)2.b. and (4)(mc)1., read together, permit the negotiation of alternative dispute resolution procedures, but require arbitration as an alternative if WIS. STAT. § 62.13(5) is a designated procedure. We therefore uphold WERC's determination in favor of the Menasha Professional Police Union. We affirm the circuit court's order.

*By the Court.*—Order affirmed.

¶ 20. REILLY, J. (*concurring*). I concur but for slightly different reasons. I believe WIS. STAT. § 111.70(4)(c)2.b. & (4)(mc) are not ambiguous when read together. I read the statutes as a clear legislative determination that bargaining—as it relates to arbitration dispute resolution procedures for police and fire members—is not collective, it is dictatorial. The union may, under § 111.70(4)(c)2.b., include arbitration within a collective bargaining agreement. The union may likewise choose not to include arbitration as a dispute resolution procedure within the collective bargaining agreement. The City, per § 111.70(4)(mc), must

_____

ary procedures in light of WIS. STAT. § 111.70(4)(mc)1., the narrow issue on appeal concerns the statutory interpretation of § 111.70(4)(c)2.b. and (4)(mc)1.

remain silent at the bargaining sessions and acquiesce to the wishes of the union as it relates to arbitration.

¶ 21. I also differ with the majority in the premise that the arbitration procedure exists as an alternative even if the collective bargaining agreement sets forth only WIS. STAT. § 62.13(5) as the dispute resolution procedure. If the union does not include arbitration within the collective bargaining agreement, then they have waived the right to require arbitration within the terms of that agreement.