DRIVERS, SALESMEN, WAREHOUSEMEN, MILK PROCESSORS, CANNERY, DAIRY EMPLOYEES & HELPERS LOCAL NO. 695, Petitioner-Respondent,

v.

WISCONSIN EMPLOYMENT RELATIONS COMMISSION, Appellant.

Court of Appeals

*No. 83–2332. Argued June 13, 1984.—Decided October 26, 1984.*
(Also reported in 359 N.W.2d 174.)

For the appellant there were briefs by *Bronson C. La Follette*, attorney general, and *David C. Rice*, assistant attorney general, and oral argument by *David C. Rice*, assistant attorney general.

For interested party, City of Greenfield, there was oral argument by *Michael P. Wherry* and *Mulcahy & Wherry*, of Milwaukee.

For the petitioner-respondent there was a brief by *Marianne Goldstein Robbins* and *Goldberg, Previant, Uelmen, Gratz, Miller & Brueggeman, S.C.*, of Milwaukee, and oral argument by *Marianne Goldstein Robbins*.

Before Bablitch, J., Dykman, J. and Bruce F. Beilfuss, Reserve Judge.

DYKMAN, J.   The Wisconsin Employment Relations Commission appeals from a judgment of the circuit court reversing WERC's declaratory ruling that the city of Greenfield has no duty to bargain collectively[1] with Drivers, Salesmen, Warehousemen, Milk Processors, Cannery, Dairy Employees and Helpers Local No. 695 on layoff and recall[2] provisions of a labor agreement. Giving due weight to WERC's interpretation that sec. 62.13 (5m), Stats., governs the order of layoff and recall of police officers and precludes bargaining on the subject,

[1] Section 111.70, Stats., the Municipal Employment Relations Act, provides for collective bargaining. Section 111.70(1)(d) (1981–82) provides in part:

"Collective bargaining" means the performance of the mutual obligation of a municipal employer, through its officers and agents, and the representatives of its employes, to meet and confer at reasonable times, in good faith, with respect to wages, hours and conditions of employment, except as provided in s. 40.81(3), with the intention of reaching an agreement, or to resolve questions arising under such an agreement.

Section 111.70(3), Stats., provides in part:

(a) It is a prohibited practice for a municipal employer individually or in concert with others:

. . . .

4. To refuse to bargain collectively with a representative of a majority of its employes in an appropriate collective bargaining unit.

[2] The parties use the terms "layoff" and "recall." Section 62.13 (5m), Stats., uses the terms "dismissal" and "reemployment." For the purposes of this case, the terms are interchangeable.

we conclude this to be a reasonable interpretation of the statutes, and reverse.

Local No. 695, which represents the nonsupervisory police officers employed by the city of Greenfield, proposed the continuation of a 1980–81 collective bargaining agreement provision relating to layoff and recall during negotiations for a successor agreement. The provision states that in the event of layoff the employe with the least seniority *in the bargaining unit* shall be laid off first and recall shall be in reverse order. The city countered that the proposed provision was in irreconcilable conflict with sec. 62.13(5m), Stats.,[3] which provides, in part, that when it becomes necessary to reduce employees in police and fire departments, "subordinates shall be dismissed in the order of the shortest length of service *in the department* . . . ." (Emphasis supplied.) All city supervisory police employes had been promoted from nonsupervisory positions within the nonsupervisory bargaining unit and by contract lost their seniority in that unit within one year of their promotion. Thus, seniority in the department differed from seniority in the nonsuper-

[3] Section 62.13(5m), Stats., provides in part:

(a) When it becomes necessary, because of need for economy, lack of work or funds, or for other just causes, to reduce the number of subordinates, the emergency, special, temporary, part-time, or provisional subordinates, if any, shall be dismissed first, and thereafter subordinates shall be dismissed in the order of the shortest length of service in the department, provided that, in cities where a record of service rating has been established prior to January 1, 1933, for the said subordinates, the emergency, special, temporary, part-time provisional subordinates, if any, shall be dismissed first, and thereafter subordinates shall be dismissed in the order of the least efficient as shown by the said service rating.

(b) When it becomes necessary for such reasons to reduce the number of subordinates in the higher positions or offices, or to abolish any higher positions or offices in the department, the subordinate or subordinates affected thereby shall be placed in a position or office in the department less responsible according to his efficiency and length of service in the department.

visory bargaining unit for any officer who had been promoted more than one year previously.[4] The city petitioned WERC for a declaratory ruling. WERC ruled that the proposed agreement provision was in irreconcilable conflict with sec. 62.13(5m) and thus was a prohibited subject of bargaining within the meaning of sec. 111.70(1)(d), Stats. (1981–82). The circuit court reversed this ruling, concluding that the parties could somehow enter into an agreement that did not violate the statute.

### Weight Accorded WERC's Ruling

Section 227.20, Stats., describes judicial scope of review of administrative agency action and at (5) provides "[t]he court shall set aside or modify the agency action if it finds that the agency has erroneously interpreted a provision of law . . . ." Section 227.20(10), however, provides "[u]pon such review due weight shall be accorded the experience, technical competence, and specialized knowledge of the agency involved . . . ."

When WERC construes the statute it is charged with applying, its interpretation of the statute is entitled to great weight. We will defer to the agency's interpretation unless the interpretation has no rational basis. *Blackhawk Teachers' Federation v. WERC*, 109 Wis. 2d 415, 421–22, 326 N.W.2d 247, 251 (Ct. App. 1982).

In *Glendale Prof. Policemen's Asso. v. Glendale*, 83 Wis. 2d 90, 100–01, 264 N.W.2d 594, 600 (1978), the court said:

Here, the question does not concern the application of a labor statute but the Commission's power to enforce it in the first instance in the light of another state statute. This issue, the relationship between two state statutes, is

---

[4] Though distinctions may exist in other circumstances, in this context we use "seniority" to mean only "length of service."

within the special competence of the courts rather than the Commission, and therefore this court need not give great weight . . . .[5]

In *City of Brookfield v. WERC*, 87 Wis. 2d 819, 827, 275 N.W.2d 723, 727 (1979), the court said "WERC should not be accorded the authority to interpret the appropriate statutory construction to ch. 62, Stats." The court concluded that "WERC's statutory interpretations beyond the field of labor law will not be entitled to persuasive or substantial weight." *Brookfield,* 87 Wis. 2d at 828, 275 N.W.2d at 727. In that case the court undertook "an independent judicial inquiry into the proper construction of sec. 111.70(1)(d), Stats., and its impact on the exercise of municipal powers enumerated in ch. 62." *Id.* at 826, 275 N.W.2d at 727.

In *Boynton Cab Co. v. ILHR Department,* 96 Wis. 2d 396, 405–06, 291 N.W.2d 850, 855 (1980), the court said:

In reviewing a circuit court order reversing or modifying an order of an administrative agency, an appellate court's scope of review is identical to that of the circuit court. . . . Questions of law, including the construction, interpretation, or application of a statute, are reviewable *ab initio.* . . . Although sec. 227.20(2), Stats. (1973), provides that due weight will be accorded the experience, technical competence, and specialized knowledge of the administrative agency involved, no special deference is required when this court is as competent as the administrative agency to decide the legal question involved. [Citations omitted.]

More recently, in *Arrowhead United Teachers v. ERC,* 116 Wis. 2d 580, 594, 342 N.W.2d 709, 716 (1984), the

---

[5] However, the court also said that it would "[r]eview de novo [which] accords due consideration to the arbitrator's decision." *Glendale,* 83 Wis. 2d at 100, 264 N.W.2d at 600. Black's Law Dictionary 392 (rev. 5th ed. 1979) defines *de novo* as "new; afresh" and *de novo* trial as "[t]rying a matter anew; the same as if it had not been heard before and as if no decision had been previously rendered."

court said, "where the question involved is one of first impression, the court will accord the agency's interpretation due weight in determining the appropriate statutory construction, rather than the great weight-rational interpretation standard."

In *Bruns Volkswagen, Inc. v. DILHR,* 110 Wis. 2d 319, 324, 328 N.W.2d 886, 889 (Ct. App. 1982), we said, "[i]f the decisions of the supreme court are inconsistent, we should follow that court's practice of relying on its most recent pronouncement." We conclude that in this instance where, as in *Arrowhead,* the issue concerns the power of WERC to enforce a labor statute in the light of another state statute, the agency's interpretation of the statutes should be given due weight. The trial court therefore erred when it gave no weight to the agency interpretation of the statutes.

### *Does Sec. 62.13(12), Stats., Preclude Bargaining Agreement Provision?*

The Municipal Employment Relations Act, sec. 111.70, Stats. establishes the general duty of a municipal employer to bargain collectively with its employes and to abide by any collective bargaining agreement agreed upon. Nothing in sec. 111.70 precludes bargaining on order of layoff by bargaining unit seniority: The matter is simply not addressed. Section 111.70(6) states:

The public policy of the state as to labor disputes arising in municipal employment is to encourage voluntary settlement through the procedures of collective bargaining. Accordingly, it is in the public interest that municipal employes so desiring be given an opportunity to bargain collectively with the municipal employer through a labor organization or other representative of the employes' own choice. If such procedures fail, the parties should have available to them a fair, speedy, effective and,

above all, peaceful procedure for settlement as provided in this subchapter.

Section 62.13, Stats., specifically regulates police and fire departments and "shall be construed as an enactment of state-wide concern for the purpose of providing a uniform regulation of police and fire departments." Sec. 62.13(12). It regulates several matters that other occupational groups are free to bargain and only one provision, sec. 62.13(4)(d), is expressly made subject to Chapter 111, Employment Relations.[6]

In *Board of Education v. WERC,* 52 Wis. 2d 625, 640, 191 N.W.2d 242, 250 (1971), the court said: "We believe the specific school statutes prevail over the general municipal employee statutes in those instances where both cannot be given effect, or where they do not harmonize."

In *Fred Rueping Leather Co. v. City of Fond du Lac,* 99 Wis. 2d 1, 5, 298 N.W.2d 227, 230 (Ct. App. 1980), we said that it is a "basic rule [of statutory interpretation] that the more specific statutory language is to control over the less specific."

In *Glendale,* 83 Wis. 2d at 108, 264 N.W.2d at 603, the court said that "[s]ec. 111.70, Stats., is legislation that specifically authorizes local action, i.e., the adoption of collective bargaining agreements . . . even though statutes of statewide concern also govern wages, hours, and conditions of employment," and pointed out that a stat-

---

[6] The other matters regulated include rest days, sec. 62.13(7m), Stats., hours of labor, sec. 62.13(7n), disciplinary actions against subordinates, sec. 62.13(5), and dismissal and employment, sec. 62.-13(5m). Only sec. 62.13(4), which regulates the reemployment of subordinates, specifies at (d) that examinations given shall be "subject to ss. 111.321, 111.322 and 111.335, arrest and conviction record." Section 111.321, Stats., specifies prohibited bases of employment discrimination, sec. 111.322 prohibits discriminatory actions and sec. 111.335 defines prohibited employment discrimination on the basis of arrest or conviction record.

ute "of statewide concern does not make invalid all local regulation in the area covered by the statute." In that case, however, the court concluded that the police chief's sec. 62.13(4)(a), Stats., power to appoint qualified subordinates could be harmonized with the municipal employer's sec. 111.70, Stats., duty to bargain. The parties could bargain to provide a police chief with authority to promote only the most senior of the qualified candidates available. *Id.* at 106, 264 N.W.2d at 602–03.

In this case sec. 62.13, Stats., is specific to police and fire departments. It sets forth detailed prescriptions on matters sec. 111.70, Stats., does not address. Section 62.13 describes more narrowly the areas in which municipal police and fire departments may bargain than the general municipal employee statute, sec. 111.70. We conclude that sec. 111.70, in the absence of sec. 62.13, could be interpreted to permit a collective bargaining agreement that provided layoff by bargaining unit seniority, since if sec. 111.70 stood alone the statutes would be silent on the matter. However, because sec. 62.13, specifically prohibits layoff in police and fire departments on any other basis than length of service in the department, we conclude that the legislature has expressly prohibited bargaining any contract provision that violates that statute.

In *Brookfield* the issue was whether an economically motivated decision to lay off five firefighters as a means to implement a fire department budget reduction was a mandatory subject of collective bargaining pursuant to sec. 111.70(1)(d), Stats. (1981–82). The court held that it was not a mandatory subject of collective bargaining because ch. 62, Stats., enumerated legislatively delegated municipal powers and obligations, and the decision to lay off employees was "a matter primarily related to the exercise of municipal powers and responsibilities and the

integrity of the political processes of municipal government" rather than primarily related to wages, hours and conditions of employment. *Brookfield*, 87 Wis. 2d at 830, 275 N.W.2d at 728. In this case the issue is whether order of layoff and recall of employees is a mandatory subject of collective bargaining pursuant to sec. 111.70 (1) (d) (1981–82) despite the legislative mandate of municipal obligation to lay off police and fire employees in order of the shortest length of service in the department. Although the order of layoff and recall of employees does relate primarily to wages, hours and conditions of employment, sec. 62.13(5m), Stats., expressly obliges municipalities to conform to its terms. As in Brookfield, sec. 111.70(1) (d) (1981–82) does not override ch. 62.

This case is distinguishable from *Glendale,* in which the duty to bargain could be harmonized with the police chief's power to appoint qualified subordinates. "A labor contract may not violate the law." *Glendale,* 83 Wis. 2d at 102, 264 N.W.2d at 600. WERC's conclusion that sec. 62.13(5m), Stats., precluded bargaining on the order of layoff and recall of police officers is entitled to due weight. Giving it that weight, we reverse.

*By the Court.*—Judgment reversed.