EAU CLAIRE COUNTY, Plaintiff-Respondent,†

v.

GENERAL TEAMSTERS UNION LOCAL NO. 662, Defendant-Appellant,

WISCONSIN EMPLOYMENT RELATIONS COMMISSION, Defendant.

Court of Appeals

*No. 98–3197. Submitted on briefs May 10, 1999.—Decided June 8, 1999.*

(Also reported in 599 N.W.2d 423.)

†Petition to review granted.

640

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Naomi E. Soldon* and *Kristine Aubin* of *Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman S.C.,* Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Keith R. Zehms* and

*Mindy Kay Dale* of Corporation Counsel's Office, Eau Claire.

Before Cane, C.J., Myse, P.J., and Hoover, J.

MYSE, P.J.   General Teamsters Union Local Number 662 (union) appeals a judgment permanently enjoining the Wisconsin Employment Relations Commission (WERC) from acting on the union's prohibited practice complaint. The complaint alleges the Eau Claire County Sheriff's Department (County) refused to arbitrate deputy sheriff John R. Rizzo's termination, as the collective bargaining agreement between the County and the union requires. The union contends that the court erred when it concluded that § 59.52(8)(c), STATS., creates the exclusive forum to challenge discipline and termination disputes, and that therefore the collective bargaining agreement providing arbitration for such disputes was null and void. Because we conclude that ch. 59, STATS., does not establish the exclusive forum for appealing discipline or termination determinations, the collective bargaining agreement providing for arbitration of such disputes is valid and enforceable. Therefore, we reverse the judgment and remand with directions to deny the County's request for an injunction.

The parties stipulated to the relevant facts giving rise to this dispute. The County and the union are parties to a collective bargaining agreement negotiated pursuant to § 111.70, STATS. The agreement requires just cause for discipline, including termination, and provides for a grievance procedure culminating in the arbitration of a disciplinary or termination dispute. Rizzo was covered by the collective bargaining agreement. The County has established a civil service

system under § 59.07(20), STATS., 1993–94, and, under that system, the County's personnel committee acts as the civil service commission for making just cause determinations. Both § 59.52(8)(b), STATS., and § 4.01 of the collective bargaining agreement provide that no law enforcement employee may be disciplined without just cause.

The committee issued a decision to terminate Rizzo and notified him of his statutory appeal rights to circuit court pursuant to § 59.52(8)(c), STATS. Rizzo did not file a circuit court appeal but, instead, filed a grievance with the sheriff and the personnel committee, pursuant to the collective bargaining agreement, contesting the just cause determination. The sheriff denied the grievance, but the committee never met to consider Rizzo's grievance. Instead, the County informed Rizzo that it refused to utilize the arbitration provisions of the grievance procedure, contending that a discharged employee's sole remedy was an appeal to the circuit court.

The union then filed a prohibited practice complaint with WERC alleging that the County had committed a prohibited practice by refusing to arbitrate in accordance with the collective bargaining agreement. In response, the County filed a declaratory action seeking to enjoin WERC from exercising jurisdiction over the union's prohibited practice complaint. The court ultimately issued a permanent injunction after determining that Rizzo's exclusive remedy for appealing complaints of improper discipline or discharge was circuit court review pursuant to § 59.52(8)(c), STATS.

The sole question presented is whether § 59.52(8)(c), STATS., creates the exclusive remedy for

complaints involving the discipline or discharge of deputy sheriffs, rendering the collective bargaining agreement's grievance procedure culminating in arbitration null and void. Because this dispute involves interpretation of a statute, it is reviewed as a question of law without deference to the trial court's determination. *Aiello v. Village of Pleasant Prairie*, 206 Wis. 2d 68, 70, 556 N.W.2d 697, 699 (1996). Ascertaining legislative intent is the goal of statutory interpretation. *State v. Setagord*, 211 Wis. 2d 397, 406, 565 N.W.2d 506, 509 (1997). We begin with the statute's plain language. *Id*. at 406, 565 N.W.2d at 510. If the legislative intent can be determined from the clear and unambiguous language of the statute itself, the statute's terms will be applied in accordance with the statute's plain language. *In re J.A.L.*, 162 Wis. 2d 940, 962, 471 N.W.2d 493, 502 (1991). Only if there is ambiguity do we resort to rules of construction and extrinsic materials in an effort to determine legislative intent. *Id*. "A statute is ambiguous when it is capable of being understood in two or more different senses by reasonably well-informed persons." *Setagord*, 211 Wis. 2d at 406, 565 N.W.2d at 510.

Section 59.52(8)(c), STATS., provides:

> If a law enforcement employe of the county is dismissed, demoted, suspended or suspended and demoted by the civil service commission or the board under the system established under par. (a), the person dismissed, demoted, suspended or suspended and demoted may appeal from the order of the civil service commission or the board to the circuit court by serving written notice of the appeal on the secretary of the commission or the board within 10 days after the order is filed. Within 5 days after receiving written notice of the appeal, the commis-

sion or the board shall certify to the clerk of the circuit court the record of the proceedings, including all documents, testimony and minutes. The action shall then be at issue and shall have precedence over any other cause of a different nature pending in the court, which shall always be open to the trial thereof. The court shall upon application of the accused or of the board or the commission fix a date of trial which shall not be later than 15 days after the application except by agreement. The trial shall be by the court and upon the return of the board or the commission, except that the court may require further return or the taking and return of further evidence by the board or the commission. The question to be determined by the court shall be: Upon the evidence is there just cause, as described in par. (b), to sustain the charges against the employee? No cost shall be allowed either party and the clerk's fees shall be paid by the county. If the order of the board or the commission is reversed, the accused shall be immediately reinstated and entitled to pay as though in continuous service. If the order of the board or the commission is sustained, it shall be final and conclusive.

■

We conclude that the legislature's intent as to whether § 59.52(8)(c), STATS., is the exclusive appeal remedy for discipline or termination of deputy sheriffs cannot be resolved based upon the statutory language itself. We first note that the statute does not explicitly provide that it is the sole remedy available to resolve appeal dismissals, suspensions or demotions. The use of the term "may" in the statute is ambiguous. The word may connote that there are other avenues of appeal available aside from the remedy provided by the statute. The term "may," however, may simply connote

that the resort to circuit court appeal is within the determination of the aggrieved party and is available but not mandated by the statutory provision. The aggrieved party might choose not to challenge the termination at all. Accordingly, we conclude that the statute is ambiguous as to whether it provides the exclusive remedy available for appealing disciplinary or termination disputes involving a deputy sheriff. Therefore, we may resort to extrinsic evidence in construing the provisions of this statute to ascertain the legislature's intent. *J.A.L.*, 162 Wis. 2d at 962, 471 N.W.2d at 502.

We conclude for a variety of reasons that ch. 59, STATS., does not provide the exclusive appeal remedy available to deputy sheriffs who have been disciplined or terminated by the sheriff. First, as noted, the statute itself does not provide that it is the exclusive remedy to resolve such disputes. The absence of such language is significant because the chapter was recently amended effective September 1, 1996.[1] The legislature is presumed to know the state of the law when it enacts or amends legislation. *Murphy v. LIRC*, 183 Wis. 2d 205, 218, 515 N.W.2d 487, 492–93 (Ct. App. 1994). In amending ch. 59, the legislature could have provided that the statute's appeal procedures are the exclusive remedy if it intended that result. The legislature's failure to specifically so provide suggests its acquiescence in the current state of the law which provided for the enforcement of arbitration provisions as part of collective bargaining agreements. *See State v. P.G. Miron Constr. Co.*, 181 Wis. 2d 1045, 1055, 512 N.W.2d 499, 504 (1994) (it has been the policy of the state and the

---

[1] Chapter 59, STATS., was amended by 1995 Wis. Act 201. Among the amendments, § 59.07(20), STATS., was amended and renumbered § 59.52(8), STATS.

supreme court to foster arbitration as an alternative to litigation).

We further note that WERC in *Dodge County*, Decision No. 21574 (WERC 4/84), had determined that it was possible to harmonize ch. 59, STATS., appeal procedures and collective bargaining agreements by treating the grievance arbitration forum as an alternative appeal forum if a circuit court appeal has not been taken. The conclusion that disciplinary appeal procedures were a mandatory subject of bargaining means that these provisions are valid methods of dispute resolution between an employer and an employee. WERC has special expertise in collective bargaining agreement issues, so we accord its conclusion great weight. *Racine Educ. Ass'n v. WERC*, 214 Wis. 2d 353, 358, 571 N.W.2d 887, 890 (Ct. App. 1997).

We recognize that, wherever possible, interpretations of collective bargaining agreements must be harmonized with statutes that also bear on conditions of employment. *Glendale Prof'l Policemen's Ass'n v. City of Glendale*, 83 Wis. 2d 90, 100–01, 264 N.W.2d 594, 600–01 (1978). By harmonizing the collective bargaining agreement's arbitration provision with ch. 59, STATS., WERC in *Dodge County* reasoned that the application of the arbitration provision would not render the statutory appeal process a nullity because ch. 59 would apply in full to those employees who were not part of the collective bargaining agreement that contains dispute resolution provisions. This argument is persuasive and supports our conclusion that the provisions of ch. 59 are not exclusive, nor do they pre-empt an existing collective bargaining agreement.

A second and equally compelling reason to conclude that the legislature did not intend the provisions of ch. 59, STATS., to be exclusive is the strong tradition

both in this state and throughout the nation favoring arbitration of employment related disputes. "The law of Wisconsin favors agreements to resolve municipal labor disputes by final and binding arbitration." *Fortney v. School Dist. of West Salem*, 108 Wis. 2d 167, 172, 321 N.W.2d 225, 229 (1982). The Wisconsin legislature specifically declared that Wisconsin's public policy regarding labor disputes is to "encourage voluntary settlement through the procedures of collective bargaining." Section 111.70(6), STATS.

National public policy is no less committed to arbitration as a means of resolving employment disputes. National labor legislation favors collective bargaining arbitration procedures as an alternative method of dispute resolution. "[T]he basic policy of national labor legislation [is] to promote the arbitral process as a substitute for economic warfare." *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers v. Lucas Flour Co.*, 369 U.S. 95, 105 (1962). In addition, the United States Supreme Court, consistent with national labor legislation, has long held that public policy favors arbitration as an alternative means of dispute resolution. *See United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 577–78 (1960); *see also United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596 (1960) (Federal labor law is noteworthy for its strong pubic policy in favor of the private resolution of labor disputes without resort to the courts); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) (Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.). A legislative intent to contravene not only the declared public policy of this state but also the longstanding traditional public policy of this entire nation must not be so readily inferred in a statute that is

ambiguous as to its intent. Given such strong statements of public policy favoring arbitration, it is difficult to conceive that the legislature would enact a statute directly in contravention of this state's announced public policy without using specific explicit language to do so. Such a dramatic change in public policy should not have to be made by inference.

Additionally, our supreme court has addressed related issues in two cases, *Brown County Sheriff's Dept. v. Employees Ass'n*, 194 Wis. 2d 265, 533 N.W.2d 766 (1995), and *Heitkemper v. Wirsing*, 194 Wis. 2d 182, 533 N.W.2d 770 (1995). While the precise issue before this court was not directly raised in either of those cases, their results involved the application of the arbitration process provided in the collective bargaining agreement. In *Heitkemper*, the supreme court concluded that a sheriff's statutory powers pertaining to the appointment of deputy sheriffs can be limited by a collective bargaining agreement between the county and the union. *Id.* at 200–01, 533 N.W.2d at 778. In *Brown County*, the court concluded that a sheriff's power to dismiss or not reappoint a previously appointed deputy was not statutorily protected and therefore may be subject to the collective bargaining agreement between the county and the labor union. *Id.* at 273–74, 533 N.W.2d at 769. Although not conclusive, the resolution of both cases would be inconsistent with a declaration now that the procedure those decisions mandated is null and void. Our supreme court's decisions invoking a collective bargaining agreement's arbitration provisions on two occasions supports our conclusion that the agreement is valid and enforceable and has not been rendered a nullity by ch. 59, Stats.

The County contends that *City of Janesville v. WERC*, 193 Wis. 2d 492, 535 N.W.2d 34 (Ct. App.

649

1995), is persuasive authority and should be followed in this case. We do not agree. In *City of Janesville*, we concluded that the collective bargaining agreement with the city police department, calling for arbitration of certain disciplinary decisions, was irreconcilable with § 62.13(5), STATS., 1995–96, which provided for appeals from orders of the police and fire commission (PFC) to the circuit court. *Id.* at 511, 535 N.W.2d at 42. Therefore, the union's proposal giving a suspended officer the right to arbitrate the suspension rather than seek a hearing before the PFC was not a mandatory subject of bargaining. *Id.*

*City of Janesville* concerned a city police officer's right to arbitrate a disciplinary matter and therefore was decided on an entirely different statute, which is specific to police and fire departments, § 62.13(5), STATS. Chapter 62, STATS., is different in its scope and procedures from the provisions of ch. 59, STATS. In particular, we note fundamental differences between the "bodies" responsible for making disciplinary determinations. Disputes resolved under ch. 62 are submitted to an impartial body, the PFC, which operates independently of the city itself. Section 62.13(1), STATS. The PFC is comprised of citizen members who have no direct interest in the outcome of the case as would a party to the dispute. Member appointment is designed so as to prevent the commission from operating as an agent of a city officer or police chief. Chapter 59, however, provides for disciplinary dispute resolution by one of the parties to the dispute itself. Sections 59.52(8)(b) and (c), STATS., allow the disciplinary determinations to be made either by a civil service commission *or by the board*. In this instance, the decision to terminate Rizzo was made by the Eau Claire County Board's Personnel Committee, whose membership is comprised of county

board members pursuant to § 59.13(1), STATS. Disputes under ch. 59 are resolved by a party with a direct interest in the case, because the County is a signatory to the collective bargaining agreement and is the party against whom the grievance is filed.

█

The importance of resolving employment disputes with an equitable process is strained when one party to the dispute is vested with the authority to determine the dispute's resolution. We believe that such an inequitable process is inconsistent with the long-standing goal of providing a fair and equitable resolution of such grievances. *See Naus v. Joint Sch. Dist. No. 1*, 76 Wis. 2d 104, 110–11, 250 N.W.2d 725, 728–29 (1977). We conclude that there is a significant difference in the dispute resolution procedures identified in ch. 62, STATS., from those identified in ch. 59, STATS., and that the court's decision in *City of Janesville* is therefore inopposite to the issues that we address in this case.

Because we conclude that ch. 59, STATS., does not establish the exclusive forum for appeal of discipline or termination determinations, the collective bargaining agreement providing for arbitration of such disputes is valid and enforceable. Therefore, we reverse the judgment and remand with directions to the trial court to deny the County's request for an injunction.

*By the Court.*—Judgment reversed and cause remanded with directions.

CANE, C.J. *(dissenting)*. I respectfully dissent. Contrary to the majority's conclusion, I conclude that under our court's rationale in *City of Janesville v. WERC*, 193 Wis. 2d 492, 535 N.W.2d 34 (Ct. App. 1995), the statutory termination and appeal proce-

dures for deputy sheriffs under §§ 59.21 and 59.07(20), STATS.,[1] are exclusive and cannot be modified by a collective bargaining agreement.

In this discharge proceeding, the County followed the statutory procedures for discharge under § 59.07(20)(b), STATS., and the statutory just cause hearing was held before the Committee on Personnel, acting as the civil service commission, on October 30, 1996. This was a full evidentiary hearing. Witnesses testified and were cross-examined; all testimony was transcribed; and exhibits were received into evidence.

After the commission found just cause for the discharge, a written notice was sent to Rizzo informing him of his statutory right to appeal the decision to the circuit court. No appeal was taken to the circuit court. Instead, Rizzo sought another just cause hearing before an arbitrator when he filed the prohibitive practice complaint. The County, on the other hand, filed a declaratory judgment action, thus joining the issue of whether the statutory circuit court review is the sole and exclusive remedy following an adverse decision of the commission. The circuit court agreed with the County, and this appeal followed.

It is important to observe that when enacting 1993 Wis. Act 53, effective November 25, 1993, the legislature inserted nearly identical disciplinary and appeal procedures into ch. 59, STATS., for deputy sheriffs and into ch. 62, STATS., for police officers. The procedures parallel each other almost word for word. In both procedures, charges are filed before a governmental body which must hold a public hearing to determine

---

[1] Chapter 59, STATS., was recodified by 1995 Wis. Act 201 effective September 1, 1996. Section 59.07(20) was renumbered § 59.52(8), STATS. Section 59.21 was renumbered § 59.26, STATS. *See* 1995 Wis. Act 201 §§ 134, 273.

whether the statutory just cause standards have been met. If the decision is adverse to the law enforcement officer, he or she may appeal to the circuit court. If the circuit court sustains the order, it becomes final and conclusive.

As the County points out, before 1993 Wis. Act 53, no just cause due process hearing was required before the sheriff could discharge a deputy. Rather, before 1993 Wis. Act 53, the deputy's recourse was through the contractual grievance procedure which allowed up to forty days for the Committee on Personnel to review the sheriff's decision. If upheld, the decision could be appealed to arbitration within twenty days. Consequently, under this procedure, the deputy could go without pay for months before the process was completed.

The legislature addressed this situation in 1993 Wis. Act 53 by restricting the sheriff's authority to dismiss a deputy until the commission is convinced that just cause supports the discharge. No longer can the sheriff exercise independent authority and dismiss a deputy without pay and await arbitration. Now, until the commission files its written decision, the deputy's pay and employment status is maintained. Also, the statute gives the deputy a speedy court review of the commission's decision. Interestingly, an attempt was made through Senate Substitute Amendment 1 to 1993 Senate Bill 66 to give deputies the option of appealing the commission's order to either the circuit court or an arbitrator. However, that amendment was not incorporated into the final version of 1993 Wis. Act 53. While the legislature refused to give this option in the Act, Rizzo now attempts to have this court do what the legislature specifically refused to do.

Obviously, when enacting 1993 Wis. Act 53, the legislature was not only correcting what it perceived as an inequitable discipline and discharge process for sheriff deputies and police officers, it also was making the process the same for all law enforcement officers by developing a nearly identical procedure for deputies in ch. 59, STATS., and police officers in ch. 62, STATS. Thus, our rationale in *City of Janesville* becomes important, especially if the procedures are to remain identical as the legislature intended.

In *City of Janesville*, we specifically rejected the notion that a dismissed police officer could proceed with arbitration rather than participating in the just cause hearing before the commission. *Id.* at 509–11, 535 N.W.2d at 41–42. We held that because the commission was the exclusive body to conduct the just cause hearing and only that decision was subject to court review, allowing arbitration would render the statutory procedures meaningless. *Id.* at 504–05, 535 N.W.2d at 39–40. We concluded, therefore, that when there was an irreconcilable difference between the statutory procedure and the arbitration provisions of the collective bargaining agreement, the statute controls. *Id.* at 509–11, 535 N.W.2d at 41–42.

The same rationale applies here. If the deputy can decline to seek court review of the commission's decision and instead obtain a de novo hearing before an arbitrator on the just cause issue, the required statutory just cause hearing and subsequent circuit court review become meaningless.[2] I would adopt our ratio-

[2] The County argues that we should adopt the rationale in *Milas v. Labor Ass'n*, 214 Wis. 2d 1, 571 N.W.2d 656 (1997), and conclude that Rizzo should be estopped from seeking arbitration after participating in the statutory just cause hearing and losing. The County argues persuasively that Rizzo knew from the

nale in *City of Janesville* and likewise conclude that there is an irreconcilable difference between the statutory procedure and the arbitration provisions of the collective bargaining agreement. A contract provision that runs counter to an expressed statutory command is void and unenforceable. *See, e.g., Drivers, etc., Local No. 695 v. WERC*, 121 Wis. 2d 291, 297–99, 359 N.W.2d 174, 177–78 (Ct. App. 1984). Consequently, the statute must control.

As the trial court here correctly stated:

> What the defendant seeks is for the court to adopt what the legislature has rejected and add the provision for independent de novo fact finding by the arbitrator. . . . Accordingly, the irreconcilable conflict between the arbitration provisions of the collective bargaining agreement and the statutes renders the arbitration provisions of the collective bargaining agreement invalid and void.

Both chs. 59 and 62, STATS., indicate that the deputy or officer "may" appeal the commission's decision to the circuit court. The word "may" simply means that

---

very beginning that the commission's just cause hearing conducted was the statutory hearing and, therefore, he cannot now seek arbitration after losing. However, it appears that under the collective bargaining agreement the deputy must first participate in a just cause hearing before the Committee on Personnel, which in this case acted as the civil service commission. It is unclear whether Rizzo could have sought arbitration before participating in the commission's just cause hearing. Because I agree with the County's argument that the holding in *City of Janesville v. WERC*, 193 Wis. 2d 492, 535 N.W.2d 34 (Ct. App. 1995), applies equally to ch. 59, STATS., it is unnecessary to address its contention that we should apply the rationale in *Milas* and hold that Rizzo is estopped from pursuing arbitration.

the deputy or officer "may" appeal the commission's decision to the circuit court for speedy review, nothing more. By no stretch of the imagination can this mean that the legislature preserved the route of arbitration after the deputy or officer participated in the statutory just cause hearing. Otherwise, why require the statutory hearing before the commission and circuit court review of that decision? To have a trial run before going before the arbitrator? Obviously not.

Also, I find unpersuasive the majority's conclusion that because the governmental body holding the just cause hearing in ch. 62, STATS., was the Police and Fire Commission and in ch. 59, STATS., was the Committee on Personnel acting as the civil service commission, there is a difference in the bodies sufficient to justify a conclusion that the legislature must have intended to allow arbitration after the required statutory just cause hearing in ch. 59. It is a distinction without a difference. Both commissions act independently in deciding whether there is just cause for the imposed discipline or discharge. Under both procedures, the circuit court may then review the commissions' decision, not the arbitrator's, which if sustained becomes final and conclusive.

Unfortunately, because of the majority's holding, we now have two different procedures relating to deputy sheriffs and police officers. Under the holding in *City of Janesville*, the statutory procedure in ch. 62, STATS., is the exclusive method of dealing with an officer who is disciplined or removed. However, under the majority's holding in this case, ch. 59, STATS., is not the exclusive method of dealing with a deputy who is disciplined or removed. This is not what the legislature intended when enacting 1993 Wis. Act 53 for both deputy sheriffs in ch. 59 and police officers in ch. 62.

I conclude that because Rizzo failed to seek circuit court review, the commission's order became final and conclusive. Thus, I agree with the circuit court's holding that WERC is enjoined from holding any proceedings on the prohibited practices complaint.