Robert TOMASZEWSKI, Plaintiff-Respondent,

v.

David GIERA, Defendant-Appellant.

.Court of Appeals

*No. 02–2409. Submitted on briefs January 6, 2003.—Decided February 4, 2003.*

2003 WI App 65

(Also reported in 659 N.W.2d 882.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Michael D. Shiffler* and *William A. Grunewald* of *Jensen, Scott & Grunewald, S.C.* of Medford.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Charles S. Senn* of *Charles Senn Law Office* of Thorp.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J.[1]　David Giera appeals a judgment ordering him to pay Robert Tomaszewski $1,998 for his share of a fence Tomaszewski built on the border of their adjacent lands pursuant to WIS. STAT. § 90.10. Tomaszewski sued Giera to recover his cost of building Giera's portion of the fence after the town fence viewers determined Giera owed significantly less than what Tomaszewski actually paid to build the fence. Giera moved for summary judgment arguing the remedy provided in the fence viewing statute, WIS. STAT. § 90.11, was the only remedy available to Tomaszewski and that the fence viewers' determination could not be appealed. The court denied this motion. After a bench

[1] Originally assigned as a one-judge appeal, this case was reassigned to a three-judge panel on January 28, 2003. *See* WIS. STAT. RULE 809.41. All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

trial, Giera renewed his objection, which the court again denied, and entered judgment for Tomaszewski.

¶ 2. On appeal, Giera makes the same objections. We determine the remedy in the fence viewers' statute is the exclusive remedy available to Tomaszewski and that the fence viewers' determination is subject to common law certiorari review. Therefore, we reverse and remand to the trial court to conduct a certiorari review of the fence viewers' determination.[2]

## BACKGROUND

¶ 3. Giera and Tomaszewski are adjoining land-owners in the Town of Maplehurst in Taylor County. Giera is also the town chairman. By 2001, the fence along their property line was in disrepair, and Tomasze-wski approached Giera about building a new fence. Although Giera told Tomaszewski he did not object to a new fence, he said he was concerned about the location of the halfway point because Tomaszewski had recently sold two parcels of his land, reducing their common property line to 2,200 feet.

¶ 4. In August 2001, Tomaszewski built what he believed was his share of the fence. He sent a letter to Giera informing him of his duty to build his share of the fence. Tomaszewski then requested Maplehurst's fence viewers, Anthony Friedenfels and Stanley Halida, to view the fence. The men viewed the property and determined Giera had not built his share.

¶ 5. Approximately thirty days after the viewing, Tomaszewski hired Paul Rauter to build Giera's portion of the fence. Rauter charged Tomaszewski $2,400.

---

[2] In addition, Tomaszewski has filed a motion asking us to declare Giera's appeal frivolous. *See* WIS. STAT. RULE 809.25(3). Because we are reversing the trial court's judgment, Giera's appeal is not frivolous.

Tomaszewski then submitted the bill to the fence viewers and Giera in an attempt to collect. At the next town board meeting,[3] Giera told Friedenfels and Halida that he did not believe Tomaszewski had built his own share of the fence to the proper midpoint and also that he thought Rauter's bill was too high.

¶ 6. Friedenfels and Halida then went to view the fence a second time. They determined the fence was not built to the proper midpoint of the boundary. Instead, they concluded each man should have been responsible for 1,100 feet. In addition, they determined Giera only owed Tomaszewski $950 for the fence, based on fence material prices at a local hardware store and thirty-two hours labor at $15 an hour.

¶ 7. Giera offered to pay Tomaszewski $950. Tomaszewski, however, filed a small claims action against Giera to recover his actual costs in building the fence. Giera moved for summary judgment. He contended the remedy provided in WIS. STAT. § 90.11, which allowed the complaining party to receive payment from the town in the event of a refusal to pay, was the exclusive remedy. In addition, he argued the statute provided no right to appeal the fence viewers' determination to the circuit court. The court denied Giera's motion.

¶ 8. After a bench trial in July 2002, the court found Giera was responsible for 1,100 feet of the fence. In addition, the court determined Rauter's fee was the fair market value for the fence and ordered Giera to pay Tomaszewski $1,998. Giera appeals.

---

[3] A town's fence viewers are the town's supervisors. WIS. STAT. § 90.01.

# DISCUSSION

██

¶ 9. Giera raises the same objections he made in his motion for summary judgment. Resolution of these issues requires an interpretation of the relevant fence viewing statutes, Wis. Stat. §§ 90.10 and 90.11. Statutory interpretation presents a question of law, which we review de novo. *State v. Isaac J.R.*, 220 Wis. 2d 251, 255, 582 N.W.2d 476 (Ct. App. 1998).

¶ 10. Wisconsin Stat. §§ 90.10 and 90.11 read:

**90.10 Compulsory repair of fence.** If any person neglects to repair or rebuild any partition fence that by law that person is required to maintain, the aggrieved party may complain to 2 or more fence viewers of the town, who, after giving notice as provided in s. 90.07, shall examine the fence. If the fence viewers determine that the fence is insufficient, they shall inform the delinquent party of the insufficiency and direct the delinquent party to repair or rebuild the fence within a time that the fence viewers determine is reasonable. If the fence is not repaired or rebuilt within the time fixed by the fence viewers, the complainant may repair or rebuild the fence and recover the expense of repairing or rebuilding the fence as provided under s. 90.11.

**90.11 Cost of repairs. (1)**(a) Whenever any owner or occupant of land has built, repaired or rebuilt any fence, pursuant to the provisions of this chapter, that the adjoining owner or occupant has been lawfully directed by fence viewers to build, repair or rebuild but has failed to do within the time prescribed, the owner or occupant who built, repaired or rebuilt the fence may complain to any 2 or more fence viewers of the town.

(b) The fence viewers complained to under par. (a) shall, after having given notice to the defaulting adjoining owner or occupant as provided in s. 90.07, examine

the fence and ascertain the expense of building, repairing or rebuilding the fence. If the fence viewers adjudge the fence sufficient they shall give to the complaining party a certificate under their hands of their decision and of the amount of the expense of building, repairing or rebuilding the fence and of the fees of the fence viewers.

(c) Upon receipt of the fence viewers' certificate, the complaining party may demand the amount of the expense determined by the fence viewers, together with the fence viewers' fees, from the defaulting, adjoining owner or occupant. If the adjoining owner or occupant fails to pay the expenses and fees for one month after the complaining party has demanded payment, the amount of expenses and fees together with interest at the rate of 1% per month shall constitute a special charge and lien against the adjoining owner's or occupant's lands and may be recovered in the manner provided in sub. (2).

(2)(a) The complaining party may file the certificate executed and delivered to him or her under sub. (1) (b) with the clerk of the town in which the lands charged with the expense and fees set forth in the certificate are located. Upon the filing of the certificate, the town clerk shall issue a warrant for the amount of the listed expenses and fees upon the town treasurer payable to the person to whom the certificate was executed and delivered.

(b) The amount paid by the town treasurer under par. (a) together with interest at the rate of 1% per month shall be included by the town clerk in the next tax roll as a special charge against the lands charged with the expense and fees. The special charge shall be collected by the town treasurer with the other taxes in the town. Any special charge under this paragraph remaining unpaid shall be added to the list of delinquent taxes returned to the county treasurer. The

575

county treasurer shall collect the delinquent special charge or sell the land as for delinquent taxes. All proceedings in relation to the sale of land for a delinquent special charge shall be the same in all respects as in the case of land sold for other delinquent taxes. Every county treasurer who shall collect or receive any moneys on account of delinquent charges under this subsection shall pay the moneys received to the treasurer of the proper town.

¶ 11. Thus, under this statute, adjoining landowners and occupants of land used for farming or grazing are generally required to jointly maintain partition fences. Wis. Stat. § 90.03. If one of these persons fails to build or maintain his or her share of the fence, the aggrieved landowner may complain to the fence viewers, who are the town supervisors, city aldermen or village trustees. Wis. Stat. §§ 90.01, 90.10. If the fence viewers determine the fence has not been properly built or maintained, they must direct the delinquent party to repair or rebuild the fence within a reasonable time. Wis. Stat. § 90.10. If the party does not do so, the aggrieved party may complete the repairs or construction and recover the expense by having the fence viewers determine the expense of fixing or building the fence. Wis. Stat. §§ 90.10, 90.11(1). The aggrieved party can then seek payment from the delinquent party. If the delinquent owner does not pay, the aggrieved party can then file a certificate of the fence viewers' determination with the town clerk and receive payment from the town treasury, which recoups the payment through a tax lien of the delinquent party's property. Wis. Stat. § 90.11(1)(c) and (2).

¶ 12. We first address Giera's claim that Wis. Stat. § 90.11 provides the exclusive remedy for an aggrieved party. Specifically, he argues because this statute cre-

576

ates a right and forms a remedy, it is the exclusive remedy available to Tomaszewski. *See Le Fevre v. Goodland*, 247 Wis. 512, 516–17, 19 N.W.2d 884 (1945); *John Mohr & Sons v. Jahnke*, 55 Wis. 2d 402, 412, 198 N.W.2d 363 (1972). The statute, he claims, limits the aggrieved party to demanding payment and then filing with the town, but does not allow the aggrieved party to seek redress in court.

¶ 13. The trial court, however, interpreted WIS. STAT. § 90.11 to allow an aggrieved party to enforce the fence viewers' determination in court. It noted the word "may" throughout § 90.11, saying that because the statute did not require the aggrieved party to contact the fence viewers after nonpayment or file the certificate with the town clerk, the legislature did not intend to require the party to use the process established in the statute and, therefore, the court could try the case.

¶ 14. We disagree with the trial court's analysis. The statute says the aggrieved property owner "may" file with the town clerk to recover his or her costs. Despite the use of "may" however, the statute only provides one remedy. We conclude this renders the statute ambiguous. *See Eau Claire County v. General Teamsters Union*, 228 Wis. 2d 640, 645, 599 N.W.2d 423 (Ct. App. 1999). In *Eau Claire County*, we determined a statute was ambiguous as to whether it provided the exclusive remedy for terminated county law enforcement officers when it said they "may" appeal to the circuit court, but did not list any other remedy. *Id.* at 644–45. We noted the use of "may" could connote that there are other avenues of appeal available aside from the remedy provided by the statute or that the aggrieved party might not choose to appeal at all. *Id.* at 645.

¶ 15. WISCONSIN STAT. § 90.11 presents a similar situation. The statute could be interpreted to allow the aggrieved landowner other unlisted remedies, or the choice of pursuing the listed remedy or none at all. A statute that is capable of two or more reasonable interpretations is ambiguous. *State v. Ambrose*, 196 Wis. 2d 768, 776, 540 N.W.2d 208 (Ct. App. 1995). Therefore, we may resort to its legislative history in our interpretation. *State v. Waalen*, 130 Wis. 2d 18, 24, 386 N.W.2d 47 (1986).

¶ 16. We conclude the legislature did not intend to allow an aggrieved party to seek enforcement of the fence viewers' determination in circuit court because the statute once allowed this remedy, but no longer does. The 1849 version of the fence viewing law allowed the aggrieved party to recover double the amount of the fence viewers' determination in "an action for money paid, laid out and expended." WIS. STAT. ch. 14, § 4 (1849). However, in 1915, the legislature changed the statute, making the collection process essentially the same as it is today. Laws of 1915, ch. 618 § 1397(2). In doing this, the legislature modified the remedy for a right it had created. This still remains the only authorized remedy, and it is the only one available to Tomaszewski. *See Le Fevre*, 247 Wis. at 516–17.

¶ 17. We do not, however, agree with Giera that there is no right to appeal the fence viewers' determination. When a statute makes no provision for judicial review, the action of a board or commission may be reviewed by common law certiorari. *State ex rel. Kaczkowski v. Board of Fire & Police Comm'rs*, 33 Wis. 2d 488, 501, 148 N.W.2d 44 (1967). A municipality's fence viewers are the members of its governing council; thus,

578

we conclude a determination by the fence viewers would be an action of a board subject to common law certiorari review. *See State ex rel. Hippler v. Baraboo*, 47 Wis. 2d 603, 613, 616, 178 N.W.2d 1 (1970) (it is fundamental constitutional law that legislative acts can be subjected to judicial scrutiny).

¶ 18. The trial court concluded the fence viewers' determination was subject to the same review a court has over a decision by an administrative agency. While the court correctly determined the fence viewers' decision was subject to some sort of judicial review, it incorrectly concluded what level of review it was. Administrative agencies are subject to review by Wis. STAT. ch. 227 and, as we noted, the fence viewers' determination would be subject to review by common law certiorari. Although these two procedures are similar, they are not identical. A trial court's review by common law certiorari is limited to: (1) whether the board kept within its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question. *State ex rel. Ruthenberg v. Annuity & Pension Bd.*, 89 Wis. 2d 463, 472, 278 N.W.2d 835 (1979). The general rule in common law certiorari is that the circuit court does not take evidence on the merits of the case, and the scope of review is limited to the record presented to the tribunal whose decision is under review. *Klinger v. Oneida County*, 149 Wis. 2d 838, 846, 440 N.W.2d 348 (1989).

¶ 19. The trial court, however, did not limit itself to this review. Its inquiry should have been whether the

fence viewers acted according to the law and whether their decision was reasonable. Instead, the court held a trial, taking testimony from Giera, Tomaszewski, Friedenfels, Halida and Rauter, and independently determined the expense of building the fence. This was beyond the scope of what it should have considered.

¶ 20. We remand this matter to the trial court to construe Tomaszewski's complaint as a common law writ of certiorari and to review the fence viewers' determination accordingly.

*By the Court.*—Judgment reversed and cause remanded with directions.